Scott **CRAIG**

v.

Edward **PARE**, Acting Registrar of Motor Vehicles.

Roland G. **ROY**

v.

**STATE** of Rhode Island, **REGISTRAR OF MOTOR VEHICLES DEPARTMENT OF TRANSPORTATION.**

Edward and Carol **OTIS**

v.

**RHODE ISLAND DEPARTMENT OF TRANSPORTATION.**

84–22–M.P., 84–478–M.P., 84–23–M.P. and 84–134–M.P.

Supreme Court of Rhode Island.

Aug. 23, 1985.

Anthony E. Grilli, Providence, for Scott Craig.

Kevin R. Horan, John E. Farley (Horan & Horan), Pawtucket, for Roland Roy.

Mitchell S. Riffkin, Providence, for Edward & Carol Otis.

F. Thomas O'Halloran (Office of Special Counsel), Providence, for respondents.

## OPINION

WEISBERGER, Justice.

These four petitions for certiorari have been consolidated because all involve a common question of law. Each seeks to review a judgment of the District Court affirming decisions of the Rhode Island Department of Transportation, Division of Motor Vehicles, suspending the petitioners' driver's licenses. We hereby affirm the judgments of the District Court. The facts

common to each of these cases are as follows.

In each of the four cases at bar, petitioners were involved in motor-vehicle accidents occurring at various times in 1982. Subsequent to these accidents, petitioners' driver's licenses were suspended by the Division of Motor Vehicles.[1] The petitioners then requested and were granted hearings before hearing officers of the Division of Motor Vehicles regarding the suspensions, which hearings resulted in affirmation of the suspensions. The petitioners then appealed these findings to the Sixth Division of the District Court, in accordance with G.L.1956 (1982 Reenactment) § 31–31–2,[2] which issued decisions denying and dismissing petitioners' appeals. The petitioners then petitioned this court for certiorari.

I

The issue common to these cases, which all petitioners raised before this court, is whether petitioners' due-process rights were violated. More specifically, petitioners contend that the accident reports filed with the Division of Motor Vehicles constituted hearsay evidence and as such should not have been relied on by the hearing officers of the Division of Motor Vehicles in the hearings that resulted in suspension of petitioners' licenses. Although we agree that the accident reports constitute hearsay as that term was defined at common law and might therefore be inadmissi-

ble in judicial proceedings, the Legislature has chosen to exercise its power to modify the common law by statute.

Prior to May 14, 1981, § 31–26–13 of the General Laws of Rhode Island stated, in pertinent part, that

"[a]ll accident reports made by persons involved in accidents, or by garages shall be without prejudice to the individual so reporting and shall be for the confidential use of the division or other state or municipal agencies having use for the records for accident prevention purposes or for the administration of the laws of this state relating to the deposit of security and proof of financial responsibility by persons driving or the owners of motor vehicles [and] * * * [n]o such report shall be used as evidence in any trial, civil or criminal, arising out of an accident * * *." P.L.1971, ch. 133, § 1.

Under this version of § 31–26–13, no provision was made for the use of accident reports in license suspension hearings. The common-law rules of evidence would therefore determine the admissibility of accident reports in hearings held prior to May 14, 1981, pursuant to § 31–11–7 of the General Laws of Rhode Island.[3]

■ Common-law rules of evidence dictate that written or spoken assertions made by a declarant out of court and offered for the proof of the matter asserted constitute hearsay. *McCormick's Handbook of the Law of Evidence* § 246 at 729 (3d ed.

---

1. The operators' licenses of Roland Roy and Edward Otis and the automobile registration of Carol Otis were suspended pursuant to G.L.1956 (1982 Reenactment) § 31–31–5(c) and § 31–31–9, because the vehicles involved in the accidents from which the controversy arose were not insured and the hearing officer found that a reasonable possibility existed of a judgment being rendered against each of them. Consequently, petitioners were given the alternative of filing a security deposit with the Division of Motor Vehicles or having their licenses suspended. G.L. 1956 (1982 Reenactment) §§ 31–31–4 and 31–31–9. No such security deposit was filed by either petitioner. Craig's license was suspended subject to G.L.1956 (1982 Reenactment) § 31–11–7, because the accident in which he was

involved resulted in the death of another person.

2. Section 31–31–2 states in pertinent part:
 "Any person aggrieved by any decision, or order, of the registry, made pursuant to the provisions of chapters 31 to 33, inclusive, of this title, may appeal therefrom to the sixth division of the district court * * *."

3. Section 31–11–7(b) states, in pertinent part, that:
 "Upon suspending the license of any person as hereinbefore in this section authorized, the registry shall immediately notify the licensee in writing, and upon his request shall afford him an opportunity for a hearing * * *."

Cleary 1984). Such assertions, barring the application of an exception to the hearsay rule, are inadmissible at trial under prevailing judicial standards.

Relying on the common-law rules of evidence, this court in *Rule v. Rhode Island Department of Transportation*, — R.I. —, —, 427 A.2d 1305, 1308 (1981), observed that "accident reports constitute a form of hearsay evidence." Applying G.L. 1956 (1982 Reenactment) § 31–26–13 read together with § 31–31–5(b), we concluded in *Rule* that the statutes are "clear and unambiguous and hold that the use of accident reports in presuspension hearings is not sanctioned by [their] language * * * [and that the court could] find no language that could conceivably permit accident reports to be used in determining fault." *Rule*, — R.I. at —, 427 A.2d at 1310. Given the wording of § 31–26–13, as it then existed, our holding in *Rule* was proper. However, because of the Rhode Island Legislature's subsequent amendment of § 31–26–13, that amendment has superseded our opinion in *Rule* with regard to its determination of the admissibility of reports in license-suspension hearings.

■ The new version of § 31–26–13 states additionally that

> "[accident] reports, as well as police reports, may be used by the Division of Motor Vehicles, together with such other evidence as the division may deem appropriate, to make determinations as to the reasonable possibility of a judgment being rendered for purposes of requiring security after an accident involving one or more uninsured motorists."

Because a Legislature has the right "to alter or to amend any [statute] previously adopted," *Gosz v. Quattrocchi*, — R.I.

—, —, 448 A.2d 135, 138 (1982); *Advisory Opinion to the Senate*, 108 R.I. 302, 304, 275 A.2d 256, 257 (1971), the Rhode Island Legislature's amendment of § 31–26–13 will be controlling unless forbidden by the State or Federal Constitution. Since a Legislature's acts, which are done within the scope of its powers, are assumed to be valid, amendments to existing statutes should be given full force and effect by the courts. *See Amick v. Liberty Mutual Insurance Co.*, — R.I. —, —, 455 A.2d 793, 794 (1983); *Narragansett Racing Association, Inc. v. Norberg*, 112 R.I. 791, 793–94, 316 A.2d 334, 335 (1974).

■ With the amendment of § 31–26–13 to accommodate the use of accident reports in license-suspension hearings, the Legislature has specifically provided for admission of accident reports and has, in this limited instance, superseded the application of the common-law rules of evidence and of the hearsay rule.[4] Looking to the plain words of § 31–26–13, it is obvious that the Legislature intended to make provision for the use of accident reports in license-suspension hearings. Section 31–26–13, prior to May 14, 1981, made no provision for accident reports to be used in such a way. By amending the statute to allow for the use of accident reports in license-suspension hearings, which amendment was in effect at the time of the hearings at issue in this case, the Legislature was specifically allowing the hearing officer at the Division of Motor Vehicles to consider the facts as stated in the reports and to come to a conclusion regarding the possibility of a judgment's being rendered against the licensee. From those reports and other evidence presented at the hearings, the necessity of suspending the petitioners' driver's licenses would be determined.

---

4. Although rules of statutory construction dictate that the intent of the Legislature must be taken into account by courts interpreting a statute, *City of Warwick v. Aptt*, 497 A.2d 721 (R.I.1985); *Paola v. Commercial Union Assurance Companies*, — R.I. —, —, 461 A.2d 935, 937 (1983); *The Rake v. Gorodetsky*, — R.I. —, —, 452 A.2d 1144, 1147 (1982), where no ambiguity exists, the plain words of the statute must be looked to and must be construed so as not to give the statute an absurd result or defeat its obvious purpose. *Aptt*, 497 A.2d 721 (R.I.1985); *State v. O'Rourke*, — R.I. —, —, 463 A.2d 1328, 1330 (1983); *Landrigan v. McElroy*, — R.I. —, —, 457 A.2d 1056, 1060–61 (1983); *The Rake*, — R.I. at —, 452 A.2d at 1147.

■ The hearings before the Division of Motor Vehicles are intended only to determine if there is a reasonable possibility of judgments being rendered against the petitioners. They are not intended to be definitive and final adjudications of the parties' rights and liabilities. Rather, the hearings are limited in scope and, as administrative hearings, have special procedural rules that apply.

■ Generally, administrative agencies are allowed to consider hearsay evidence when making a determination. *Opp Cotton Mills, Inc. v. Administrator of the Wage and Hour Division of the Department of Labor*, 312 U.S. 126, 155, 61 S.Ct. 524, 537, 85 L.Ed. 624, 641 (1941); *McCormick's Handbook of the Law of Evidence* § 352 at 1009. *See* 5 U.S.C.A. § 556(d) (West 1977). In keeping with this general principle, section 556(d) of the Federal Administrative Procedure Act has specifically provided for the use of hearsay evidence since 1946. 5 U.S.C.A. § 556(d). In addition, in several cases the United States Supreme Court has stated that hearsay evidence may be used in administrative proceedings. *Richardson v. Perales*, 402 U.S. 389, 409–10, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842, 857 (1971); *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 705–06, 68 S.Ct. 793, 805–06, 92 L.Ed. 1010, 1037 (1948). *See Interstate Commerce Commission v. Baird*, 194 U.S. 25, 44, 24 S.Ct. 563, 569, 48 L.Ed. 860, 869 (1904) (commission "should not be too narrowly constrained by technical rules as to the admissibility of proof").

Implicit in these cases is the determination that there is no constitutional inhibition against legislative authorization of the use of hearsay evidence in administrative proceedings. It is extremely unlikely that the Supreme Court of the United States would cite with approval the provisions of the Federal Administrative Procedure Act, which allows the use of hearsay evidence,

if it perceived a constitutional inhibition to such use. The petitioners point to no provision of the State or Federal Constitution that would limit the plenary power of the Rhode Island General Assembly to provide Rhode Island administrative agencies with a similar evidentiary rule to that which has already been established for many years by the Congress of the United States in respect to federal agencies. *See Gelch v. State Board of Elections*, —— R.I. ——, ——, 482 A.2d 1204, 1208 (1984); *Nugent v. City of East Providence*, 103 R.I. 518, 525, 238 A.2d 758, 762 (1968).

■ Therefore, consideration of the reports by the Division of Motor Vehicles did not violate the due-process rights afforded petitioners. Because G.L.1956 (1982 Reenactment) § 31–26–13 sets the standard for the extent of due process to be afforded the licensee in a license-suspension hearing, which statute allowed the hearing officers to rely on the accident reports in making a determination to suspend petitioners' driver's licenses, petitioners' due process rights were not violated.

■ This holding is further buttressed in light of the fact that petitioners had every opportunity to request that witnesses be subpoenaed to testify at the hearings in order to rebut facts stated in the accident reports. According to § 31–11–7(b),

> "[u]pon such hearing the registrar or his duly authorized agent may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers * * *."

Nothing in the records of these cases reveals that petitioners requested that the registrar exercise his authority on petitioners' behalf. Because petitioners were not refused the opportunity to present witnesses on their behalf, no one can contend that petitioners' due-process rights were violated.[5] It is the opportunity to exercise a right, and not petitioner's actual implemen-

---

5. Assuming, without deciding, that there may be a right on behalf of those accused of conduct that may result in license suspension to present *viva voce* witnesses at their option, we feel that no denial of such right has been demonstrated in the instant cases.

tation of that right, that constitutes due process. *See Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834, 859 (1944).

## II

A second issue before this court relates only to the case of Scott Craig (Craig). In his brief to this court, Craig asserted that the findings of fact made by the hearing officer of the Registry of Motor Vehicles were insufficient to support the suspension of Craig's license. More specifically, Craig claimed that unsupportable statements set forth in the accident report were used by the hearing officer to establish that Craig was the driver of the motor vehicle at the time of the accident.

 Section 31-11-7(a)(2) authorizes the Registry of Motor Vehicles to suspend an operator's driver's license when the, licensee "[h]as been involved as a driver in any accident resulting in the death or personal injury of another." It is obvious, therefore, that prior to suspension of a driver's license, it is necessary to establish that that individual was indeed the operator of the motor vehicle at the time of the accident.

 In the case at bar, the accident report filled out by Police Officer Albert E. Musard (Musard), who arrived first on the scene after the accident, identified Craig as the operator and the decedent as the passenger of the motor vehicle. Musard later testified before the hearing officer that he based this conclusion on his questioning of Craig soon after the accident.[6] Relying on

this evidence, the hearing officer stated in the report of his findings of fact, issued November 30, 1983, that Craig was the operator of the motor vehicle at the time of the accident on September 13, 1982.

The issue before us is whether the evidence presented to the hearing officer was sufficient for him to find that Craig was the operator of the motor vehicle at the time of the accident. Although we agree, generally, with petitioner's assertion that statements contained in the accident report constitute hearsay and would, as such, not be admissible at trial of an action before a court in this state, judicial rules of evidence do not apply in this situation. No hearing is required prior to suspension of an individual's driver's license. Rather, the statute, § 31-11-7(a)(2), allows for automatic suspension of the driver's license when death results in a motor-vehicle accident. As a result, the hearing officer need not apply strict rules of evidence when determining what evidence he will consider. He therefore properly relied on the accident report when concluding that Craig's license should be suspended.

Additionally, we note that the statements made in the accident report were reaffirmed at the hearing. Through testimony given by Officer Musard at the hearing, the facts leading to the officer's conclusion that Craig had been the operator of the vehicle were orally reiterated. In conjunction with the written accident report, this evidence allowed the hearing officer to conclude that Craig was operating the motor vehicle at the time of the accident.[7]

---

6. In the testimony recorded and transcribed in the "ADDENDUM TO HEARING OF 3-22-83," Musard testified as follows:
 "[HEARING OFFICER]: During your investigation, did you determine that Scott Craig was indeed the operator of the motor vehicle?
 "MUSARD: Yes, I did; he told me he was.
 \* \* \* \* \* \*
 "MUSARD: \* \* \* I asked him what happened. He stated that he didn't see the curve, didn't know the curve was there.
 \* \* \* \* \* \*
 "MUSARD: \* \* \* I \* \* \* asked [Craig] for the standard information, such as license, registration, 'were you the operator of the ve-

hicle,' and what happened. That is when he went on to relate to me that he didn't know the curve was there."

7. The hearing officer of the Registry of Motor Vehicles issued a report of his findings of fact on November 30, 1983. These findings read as follows:
 "1) Scott E. Craig was the operator of a motor vehicle on September 13, 1982.
 "2) While operating this motor vehicle, Scott Craig was involved in an accident.
 "3) This accident involved a motorcycle being operated by Craig and a fixed object.

The Legislature has specified that the findings of fact of an agency are to be reversed or modified by a court on appeal only in situations in which

"substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L.1956 (1984 Reenactment) § 42–35–15(g).

■ Certainly, the findings of the hearing officer were not erroneous in view of the reliable evidence on the record. The hearing officer not only correctly relied on the accident report, as allowed by statute, but also had the benefit of Officer Musard's testimony in finding that Craig was the driver of the motor vehicle at the time of the accident. We hold, therefore, that the probative evidence properly considered by the hearing officer was more than sufficient to support the hearing officer's decision to suspend Craig's license.

For the foregoing reasons the petitioners' petitions for certiorari are hereby denied. The writs heretofore issued are quashed. The papers in the cases may be returned to the District Court with our decision endorsed thereon.

SHEA, J., did not participate.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.

"4) After coming into contact with the fixed object, the passenger on the motorcycle, one Donna L. Vadeboncoeur was injured.

"5) As a result of these injuries, Donna Vadeboncoeur died from injuries sustained."