In re Joseph A. CROSS.

No. 92–12–M.P.

Supreme Court of Rhode Island.

Nov. 27, 1992.

Stephen J. Fortunato and Thomas Tarro, III, Fortunato & Tarro, Warwick, for plaintiff.

James E. O'Neil, Atty. Gen., Christine Jabour and Caroline Cole Cornwell, Sp. Asst. Attys. Gen., for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on a petition for certiorari to review the decision of the Presiding Justice of the Superior Court revoking the bail-bondsman license of the petitioner, Joseph A. Cross (petitioner or Cross). We are called upon to review the adequacy of the procedure that the Presiding Justice followed, as well as the constitutionality of regulating speech within the premises of the courthouse. We deny the petition in part and grant it in part. The relevant facts are as follows.

The Presiding Justice of the Superior Court received a letter from Jerome Smith (Smith), the chief clerk of the District

Court, complaining about petitioner's allegedly unprofessional behavior. The letter detailed an incident that occurred on November 20, 1991, in which petitioner, through his interpreter, agreed with the family of one Martires Dominguez to provide bail. However, when petitioner went to the cash room to bail Dominguez, he found that another bondsman had already done so at Dominguez's request. A dispute arose between the two bondsmen, as well as between Cross and the assistant District Court clerk, Sherri Rossi (Rossi). Despite Cross's protestations, Rossi refused to change the bail. Under office policy, clerks were not to become involved in disputes between contending bondsmen and were to honor only the choice of the defendant. According to the letter, petitioner then began verbally to abuse Rossi, at which point Smith expelled the two bondsmen from the cash room.

The two bondsmen and Dominguez's family continued to argue. The petitioner refused to return the fee that the family had paid him to provide bail for Dominguez. The argument became heated. Cross then left with his interpreter.

On November 21, 1991, the Presiding Justice issued an order requiring petitioner to appear before him on December 9 to show cause why his license should not be suspended or revoked. The Presiding Justice enclosed with the order a copy of Smith's letter of complaint and advised petitioner that he had the right to have counsel present.

Cross then wrote to the Presiding Justice to explain his version of the events of November 20. In his letter Cross asked to be able to retain counsel and to subpoena witnesses. The record shows no evidence that the Presiding Justice responded to Cross's letter prior to the hearing. However, the Presiding Justice did postpone the hearing until December 16, 1991, at the request of Cross's attorney.

At the hearing, which Cross attended with counsel, Cross testified concerning the events described above. Cross denied having verbally abused Rossi or having used foul language. Cross also intimated that he had been denied the opportunity to provide bail for Dominguez by someone in the clerk's office who had inappropriately recommended the other bondsman. Cross offered no evidence to back this assertion. In addition, the Presiding Justice questioned Cross briefly about certain false statements in his bondsman's application regarding the value of property Cross had pledged as surety for his bail-bondsman's license.

Cross's attorney next questioned Cross's interpreter, Juan Lopez (Lopez), who also testified to Cross's version of the above events. However, when asked whether Cross had verbally abused Rossi, Lopez did not understand the question and could not answer. The Presiding Justice then questioned Lopez about his arrest record and allowed Cross's attorney to conduct closing argument. Cross did not attempt to obtain the testimony of either Smith or Rossi, neither of whom testified against Cross.

The Presiding Justice stated that he found neither Cross nor Lopez to be credible witnesses. The Presiding Justice based this finding on Lopez's criminal record and unresponsive testimony and on Cross's unsubstantiated factual assertions. The Presiding Justice therefore revoked Cross's bondsman license under the authority of G.L.1956 (1981 Reenactment) § 12–13–21, as amended by P.L.1986, ch. 467, § 1.

Cross immediately moved for a stay of the court's order. The Presiding Justice denied the motion on December 20, 1991. Cross then filed in this court a petition for writ of certiorari as well as a motion for stay. On January 29, 1992, this court issued the writ of certiorari but denied the stay.

Cross advances four arguments in support of his petition for reinstatement and a new hearing. First, petitioner argues that because Smith and Rossi did not testify, he was denied his fundamental due process right under the Constitutions of the United States and the State of Rhode Island to confront and cross-examine his accusers. The petitioner also argues that the show cause format further denied him due process by requiring him to disprove the alle-

gations against him. Second, petitioner argues that the Presiding Justice exceeded the scope of the show cause order and of the evidence before the court in making his decision. Third, petitioner argues that the Presiding Justice's decision was not supported by the evidence. Fourth, petitioner contends that his argument with the court clerk constitutes protected speech under the First Amendment to the United States Constitution and may not be regulated.

## I

### The Due Process Issue

In addressing petitioner's due process claims, we are guided by the opinion of the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976), which sets forth three distinct factors that a court must consider in determining the requirements of due process:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

We therefore examine each of these factors in evaluating Cross's claim.

■ To begin, it is quite clear that petitioner has a property interest in his bondsman's license that is protected under the Fourteenth Amendment to the United States Constitution. *In re Carter,* 177 F.2d 75, 78 (D.C.Cir.1949); *State v. Parrish,* 254 N.C. 301, 303, 118 S.E.2d 786, 788 (1961); *In re Greene,* 130 A.2d 593, 595–96 (D.C.1957). *See also United States v. Martinez,* 905 F.2d 709 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990) (property interest in medical license); *Amsden v. Moran,* 904 F.2d 748 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) (property interest in land-surveying

license). The state cannot take away petitioner's license without affording him the protections of due process of law. The petitioner has an interest in his continued livelihood, which he gains through use of this license. Although petitioner may well be able to support himself in another line of work, that fact does not diminish his interest in continuing in this enterprise.

■ Having found that petitioner has a protected interest in his license, we must next examine the risk that the procedures used would erroneously deprive petitioner of his property interest. We note that Cross had over two weeks' prior notice of the hearing. The notice included a copy of the complaint letter, which identified the persons making the complaint and alerted petitioner of his right to counsel. The petitioner thus had two weeks in which to prepare for his show cause hearing—indeed more, since his attorney had requested and received a week's postponement. At and before the hearing, petitioner was represented by counsel. The court allowed petitioner to bring witnesses and to examine them. The court also allowed petitioner to submit written evidence. The petitioner could have subpoenaed Rossi and Smith but made no effort in this direction.

■ We also note that it was not a hearing officer but the Presiding Justice of the Superior Court, acting in his administrative capacity, who conducted the hearing. Any administrator is presumed to be neutral unless proven to be otherwise. *Gorman v. University of Rhode Island,* 837 F.2d 7, 15 (1st Cir.1988). The Presiding Justice would certainly exceed the qualifications of neutrality as an experienced trial justice who has applied the principles of due process in varying contexts. Section 12–13–21 entrusts the approval and the registration of professional bondsmen to the Presiding Justice. The court rule adopted pursuant to this statute provides for revocation of licensure by procedures within the discretion of the Presiding Justice or another justice of the Superior Court. Superior Court Rules Governing Professional Bondsmen R.P. 1. The Legislature obviously relied upon the experience and expertise of

the Presiding Justice and other justices of the Superior Court to apply procedures consonant with due process. It should be noted that in the case at bar petitioner was given a hearing prior to the termination of his license.

Given the above safeguards, we are hard put to say that petitioner was at great risk of having his license erroneously deprived. However, we must consider the value of additional or substitute safeguards. Despite the protections listed above, it is unclear whether petitioner was fully aware that the burden lay on him to produce any and all witnesses necessary to his defense or that he might have requested a continuance to rebut any of the charges made at the hearing. More detailed instructions from the Presiding Justice might have alerted petitioner to the full extent of the procedures allowed him. Furthermore, a postdeprivation review, in the form of a full evidentiary hearing, would give petitioner a chance to present his case with a full understanding of the procedure. Although petitioner has not alleged that a full evidentiary hearing would bring out new evidence in his favor, we are mindful of the fact that he may not have been aware of the procedural requirements that would be applied at his first hearing. He seems to have concentrated on the theory that it was the obligation of the Presiding Justice, or someone on his behalf, to proceed with evidence to prove the case against him. As we shall point out, the Presiding Justice did not have such an obligation. However, we wish to make certain that petitioner was not unduly prejudiced by his lack of familiarity with the requirement that he should produce evidence in his defense, as opposed merely to being prepared to respond to evidence that would be presented against him.

■ To complete our *Mathews* analysis, we consider next the interests of the state, including the function involved and the fiscal and administrative burdens. First and foremost, among the state's interests stands the efficient operation of the criminal justice system, of which the bail process is an important part. The Presiding Justice is charged with the orderly management of the bail process and must be empowered to impose penalties for its disruption. It is also in the state's interest to avoid greater administrative and fiscal burdens, particularly through duplicative hearings and through the additional tax upon the Presiding Justice's time. Finally the state has an interest in the proper regulation of bondsmen in order to preserve the public safety and to promote the general welfare.

In balancing the above interests, we take guidance from *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), in which the Supreme Court stated that "an essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Notice and a hearing is the "root requirement." *Id.* at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503. The kind of hearing, however, may vary. The Court stated in *Mathews*, 424 U.S. at 343, 96 S.Ct. at 907, 47 L.Ed.2d at 38, that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." As we noted above, petitioner had the benefit of a number of procedural safeguards. Indeed he was given an opportunity to avail himself of a full evidentiary hearing. He could have subpoenaed all witnesses who had complained against him. This right of confrontation was not diluted because petitioner did not take advantage of the procedures already at his disposal.

This court has held before that it will not find a denial of the right to confrontation in a situation in which a petitioner has failed to call witnesses when allowed to do so. *See Larue v. Registrar of Motor Vehicles*, 568 A.2d 755 (R.I.1990); *Craig v. Pare*, 497 A.2d 316 (R.I.1985). As we said in *Craig*, "It is the opportunity to exercise a right, and not petitioner's actual implementation of that right, that constitutes due process."

497 A.2d at 320–21. In the present case, petitioner could have subpoenaed Rossi and Smith and required their presence for cross-examination. Having failed to do so, petitioner cannot complain that he was deprived of the opportunity to confront his accusers.

■■■ Another contention regarding due process concerns the burden of proof. The petitioner claims that he was under no obligation to disprove the complaint but rather that the burden lay on the state to prove its allegations. As an initial matter, we point out that the show cause order, by its very wording, put the burden of coming forward with evidence on petitioner. However, the form of the order does not determine the constitutionality of the burden it imposes.

The show cause order issued by the Presiding Justice was based upon allegations of disruptive conduct that had been reduced to writing by a responsible court official. The veracity of this official and his subordinate lent a high degree of probability of the truth to their allegations. Consequently the statements contained in the show cause order were supported by probable cause to believe that the assertions were true. In requiring petitioner to come forward with evidence to rebut these assertions, the Presiding Justice utilized a model that was not in strict accordance with the models of proof utilized in criminal and civil cases. However, the judicial model in a quasi-administrative setting is not the sole permissible model that may meet the requirements of due process. We should be mindful of the wise admonition of Justice Frankfurter cited in *Mathews v. Eldridge:*

> "The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' *Joint Anti-Fascist Comm. v. McGrath,* 341 U.S. [123] at 171–172 [71 S.Ct. 624, at 649, 95 L.Ed. 817 (1951)] (Frankfurter, J., con-

curring)." 424 U.S. at 348, 96 S.Ct. at 909, 47 L.Ed.2d at 41.

Thus the show cause format that placed the burden upon Cross to disprove the assertions in the complaint, was not inherently unconstitutional for lack of due process. It was issued on the basis of probable cause as determined by the Presiding Justice in the exercise of his discretion.

## II

### Adequacy of Evidence

■■■ The petitioner asserts that the Presiding Justice's decision to revoke his license was not supported by the evidence presented at the hearing. The standard that we must apply in reviewing such a determination is that which is normally applied in reviewing findings of fact by an administrative tribunal since the Presiding Justice was acting in his administrative capacity. This standard is deferential and does not permit the reviewing judicial tribunal to substitute its judgment for that of the administrative agency. *See Milardo v. Coastal Resources Management Council,* 434 A.2d 266 (R.I.1981). Indeed, we held in *Milardo* that this court would reverse factual conclusions of administrative agencies only when "they are totally devoid of competent evidentiary support in the record." *Id.* at 272. Applying this standard, we must ask whether the Presiding Justice's decision to admit the letter of complaint into evidence and then to rely on it, rather than upon the testimony offered by petitioner and Lopez, was erroneous in law or clearly wrong as a factual determination.

Considering first the decision to admit the letter, we note that if the letter is admissible as evidence, then it may form the basis for the administrator's prima facie case and shift the burden to petitioner.

■■■ Administrative hearings are not held to the same evidentiary standards as criminal or even judicial civil proceedings. Hearsay is quite acceptable in administrative hearings. *Craig,* 497 A.2d at 320. *Cf. Beauchamp v. De Abadia,* 779 F.2d 773 (1st Cir.1985) (a doctor whose license was revoked was not denied due process, even

though hearsay evidence was admitted, when the doctor was allowed to cross-examine all the persons testifying against him as well as to present evidence in his favor and when the hearing officer was chosen for his impartiality). Hearsay doctrines did not bar the Presiding Justice from accepting Smith's letter of complaint as evidence.

■ Furthermore, it was also not erroneous for the Presiding Justice to disregard the testimony of petitioner and of his interpreter if the Presiding Justice found them incredible. A factfinder may reject "positive, uncontradicted evidence" on credibility as long as he or she "clearly but briefly states the reasons for rejecting the witness's testimony." *Hughes v. Saco Casting Co.*, 443 A.2d 1264, 1266 (R.I.1982). The trial justice stated that he found Lopez incredible because of his prior criminal record and because of his failure to understand and respond to certain questions. Regarding Cross's testimony, the Presiding Justice stated that he was "not impressed with the testimony of Mr. Cross as to whether or not his conduct on this particular day was justified. He makes some suggestion or allegations, but nothing supported by any evidence." We find that these statements are enough under *Hughes* to support the Presiding Justice's rejection of the testimony of petitioner's witnesses. Therefore, we cannot say that either the decision to admit the letter or the decision to disregard petitioner's or his witness's testimony was erroneous.

## III

### Evidence Outside the Notice

■ The petitioner also alleges that the Presiding Justice relied on extrinsic evidence in making his decision. There is no indication that the Presiding Justice relied on extraneous information in making his decision. On the contrary, the Presiding Justice stated that even though he had received other complaints, none of them were in writing and he therefore could not take them into consideration in deciding whether to revoke Cross's license. The petitioner also complains that he had no

notice that he would be questioned about his license application. In respect to this contention, we must observe that petitioner freely admitted that his application concerning the value of real estate upon which he based his qualification to act as surety significantly misstated such qualification. Indeed, the application asserted a value based upon the inclusion of a structure that had not been completed on the effective date of the application. Neither petitioner nor his counsel requested a continuance of the hearing so that he might more fully explain the discrepancy on his application. Thus it is not at all clear that a further procedural safeguard would have enhanced his ability to respond to the straightforward defect in his bond application. In the circumstances of this case, we cannot fault the Presiding Justice for considering the bond application in determining petitioner's qualifications to continue to serve as a professional bondsman as well as on the issue of his general credibility.

## IV

### First Amendment Issue

■ Finally petitioner contends that his dispute with the assistant court clerk, Rossi, is protected speech under the First and Fourteenth Amendments to the United States Constitution and under article I, section 21, of the Rhode Island Constitution. The petitioner argues that for the state to discipline him for allegedly disruptive behavior would violate his right under these constitutional provisions to petition the government for redress. However, petitioner's right to use the courthouse for expressive purposes is not unlimited. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 44–45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794, 804 (1983). On public property that is not by tradition or by designation a forum for public communication, the state may not only limit the time, place, and manner of speech but also "reserve the forum for its intended purposes, communicative or otherwise," as long as the regulation is reasonable and not an effort to suppress the

**104**

particular view expressed. *Id.* at 46, 103 S.Ct. at 955, 74 L.Ed.2d at 805. Although the courthouse is a place for public expression, it is more precisely a "limited public forum," that is, a forum opened to the public for a particular purpose. *See Kreimer v. Bureau of Morristown,* 958 F.2d 1242 (3d Cir.1992). *See also Perry Education Association,* 460 U.S. at 46 n. 7, 103 S.Ct. at 955 n. 7, 74 L.Ed.2d at 805 n. 7. In *Kreimer* the Third Circuit held that a public library is a public forum only for those activities that are consistent with the nature of a library. The First Amendment protects those consistent activities. The state may legitimately regulate other activities.

■ Similar reasoning applies here. A courthouse is a public forum, but it is so for a limited purpose: the administration of justice. Its purpose is to provide an opportunity for the presentation of testimony and the argument of advocates in a controlled judicial setting. It is not a forum in which the uncontrolled upbraiding of court officials and the disruption of clerical functions may take place at the option of professional bondsmen or members of the public. Therefore, we conclude that the Presiding Justice violated no constitutional principles in applying the sanction of revocation for petitioner's disruptive conduct.

Regarding petitioner's right to seek redress from the government, we note that Cross has other, less disruptive means by which to make his complaints known and have them investigated.

## V

### Post Deprivation Hearings

■ Although we believe that the pre-revocation hearing afforded by the Presiding Justice comports with the minimum standards required by due process of law, we recognize that neither the statute nor the rule provided instructions concerning the nature and the extent of the hearing to be provided. Consequently it cannot be stated with certainty that petitioner or his counsel was made fully aware in advance of the hearing of the requirement that they should produce such witnesses as petitioner deemed to be needed in establishing his defense. We can also not state with certainty that petitioner was aware that he might have asked for a continuance in order to explain or rebut the false statement that was contained in his renewal application.

Therefore, in order to give petitioner every opportunity to present evidence or argument to resist the revocation of his bondsman license, we deem it appropriate to allow petitioner an additional hearing before the Presiding Justice in the light of his full knowledge of his obligation to present evidence on all these issues.

It will then be the obligation of the petitioner to present such witnesses as he deems to be necessary or advantageous to the furtherance of his cause. Such witnesses would include, if he deems it fit, the chief clerk, Jerome Smith, and the clerical assistant, Sherri Rossi. He should also be prepared to explain or rebut inferences that would properly be drawn from the misstatement of real estate value contained in his application.

For the reasons stated, the petition for certiorari is denied in part and granted in part. The papers in the case may be remanded to the Superior Court with our decision endorsed thereon for an additional hearing to be conducted in accordance with this opinion.