DECISION
This is an appeal from a decision of the Department of Environmental Management (DEM), which on December 8, 1997 denied an exemption certificate to the appellant to allow him to land in excess of two hundred (200) pounds of summer flounder per day. This Court has jurisdiction pursuant to R.I.G.L. § 42-35-15.
 Facts/Travel
The appellant is a commercial fisher, who applied on February 7, 1996 for an exemption certificate for his vessel, the Quitsa Strider II (hereinafter "QS II"), to land and sell summer flounder in excess of the two hundred (200) pound per day limit under Rhode Island Fisheries Regulation 7.07-6. To obtain an exemption, appellant was required to show (1) that the operator of the vessel applying for the exemption possessed a valid Rhode Island commercial fishing license, (2) that the vessel landed and sold more than one pound of summer flounder between January 1, 1987 and December 31, 1992, and (3) that the vessel sold that summer flounder to a licensed fish dealer in the State of Rhode Island. Id. at 7.07-7. After administrative hearings DEM found on December 8, 1997 that appellant failed to satisfy the criteria required for an exemption. The appellant has filed a timely appeal in this Court.
In reviewing appellant's initial application for an exemption, DEM checked the National Marine Fisheries Service (NMFS) records for landings of summer flounder by the Quitsa Strider II in Rhode Island. (Tr. at 189). Those NMFS records, which had been requested by DEM in 1995, represented an aggregate listing of all landings of summer flounder by all vessels in the State of Rhode Island regardless of the port of origin of the vessel. (Tr. at 193, 197). Following appellant's initial denial, DEM requested an NMFS report which specifically listed landings by the QS II from 1991 to 1993 in Rhode Island. (Tr. at 190). The NMFS reports attributed all QS II landings to Massachusetts. (Tr. at 193). Lastly, a third NMFS report, which pertained only to the April 17, 1992 and November 23, 1992 landings of the QS II, showed that these landings were attributed to New Bedford.[1]
(Tr. at 193, 200). The NMFS reports are considered accurate records of fish landings listing port of sale and date of sale.
In support of his application, appellant submitted evidence which he contended concerned landings at Melville, Rhode Island of summer flounder which were sold to Bergie's Seafood, a fish dealer licensed by the Commonwealth of Massachusetts. The evidence consisted of two sales invoices from Bergie's Seafood dated April 17, 1992 and November 24, 1992. Applicant's Exhibit, No. 2. Landing reports from the NMFS attribute the April 17, 1992 sale of summer flounder to Bergie's Seafood to the port of New Bedford, Massachusetts, not Melville, Rhode Island. Applicant'sExhibit, No. 5. Expert testimony from April K. Valliere, a Marine Biologist from the Rhode Island Division of Fish and Wildlife, established that Melville, Rhode Island was not a port of landing until 1993. (Tr. at 91).
Certain testimony concerning a purported landing on November 24, 1992 was excluded by DEM, because it was based solely on hearsay. The appellant could not produce ice or fuel logs or any verifiable landing slips for the sale of summer flounder on the date in question to corroborate his claim. NMFS records did not verify the sale of summer flounder to Bergie's Seafood at Melville, Rhode Island on November 24, 1992. (Tr. at 156-57). The NMFS did report a November 22, 1992 sale of 2,010 pounds of summer flounder in New Bedford, Massachusetts by the Quitsa Strider II, but no sale was recorded for November 24, 1992.Applicant's Exhibit, No. 5. The appellant offered his own oral testimony at the administrative hearing that he did land summer flounder at Melville, Rhode Island, but that testimony was obviously based on hearsay from a member of the crew of the boat.
 Standard of Review
The review of a decision of the Department of Environmental Management by this Court is controlled by R.I.G.L. §42-35-15(g), which provides as follows for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other errors of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. Rhode Island Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Department's decision. NewportShipyard v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)). This is true even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. The Superior Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record."Rocha v. State Public Utilities Comm., 694 A.2d 722, 725 (R.I. 1997) (quoting Rhode Island Public Telecommunications Authority,et al. v. Rhode Island Labor Relations Board, et al.,650 A.2d 479, 485 (R.I. 1994)).
 1. Statutory Interpretation of Exemption Requirements
On appeal, the appellant argues that the DEM applied an erroneous interpretation of its own regulation, thus exceeding its statutory authority. The regulation in controversy requires a person holding a valid Rhode Island commercial fishing license to "[land and sell] in excess of one pound of summer flounder to alicensed fish dealer in the State of Rhode Island during the period from January 1, 1987, through December 31, 1992." (Emphasis added.) Rhode Island Fisheries Regulations7.07-7(B)(1). Appellant argues that the regulation would be satisfied by landing and selling one pound of summer flounder to a fish dealer licensed by the Commonwealth of Massachusetts, if the sale took place in the State of Rhode Island. DEM argues that the regulation requires that the sale of summer flounder be to a fish dealer licensed by this state.
The United States Supreme Court has held "that an agency's construction of its own regulations is entitled to substantial deference." Martin v. Occupational Safety and Health ReviewComm'n., 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). As the Supreme Court has noted, "[b]ecause applying an agency's regulations to complex or changing circumstances calls upon the agency's unique expertise . . . we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." Cohen v.Brown Univ., 101 F.3d 155, 173 (1st Cir. 1991) (quoting Martin, 499 U.S. at 151). A legislative enactment should not be interpreted literally "when to do so would produce results at odds with the legislative intent." Perrotti v. Solomon,657 A.2d 1045, 1048 (R.I. 1995) (quoting Kirby v. Planning Board of Reviewof Middletown, 634 A.2d 285, 290 (R.I. 1993)).
The law allows an agency to interpret its own regulations as a fundamental part of the agency's delegated lawmaking powers.Cohen, 101 F.3d, at 173. In the present case, DEM reasonably interpreted the regulation to require the sale of summer flounder during the pertinent time period to a fish dealer licensed by the State of Rhode Island. April Valliere, a member of the panel charged with reviewing applications for an exemption stated "the original denial was for two reasons, that the landings could not be verified and that the dealer was not a Rhode Island licensed dealer." (Tr. at 179). Ms. Valliere, as part of the application process, checked the Rhode Island Department of Health and DEM to see whether or not that Bergie's Seafood was a licensed Rhode Island fish dealer. (Tr. at 164-65). DEM determined that Bergie's Seafood was not licensed as a fish dealer in Rhode Island. Id.
The appellant does not appear to contest this determination.
The Rhode Island Supreme Court has refused to interpret a legislative enactment literally when to do so would produce results at odds with the legislative intent. Perrotti, 657 A.2d at 1048. Richard Sisson, Deputy Chief of Marine Fisheries, who helped draft the regulation stated, ". . . it was the State's position that those who had historically landed here, regardless of their port of origin, would be able to continue to land here". (Tr. at 127). The exemption program was also designed to "keep the level of effort in the fisheries constant . . . because we [Rhode Island] were put on a quota system" based on the number of landings in the state. (Tr. at 125). The number of landings attributed nationally to the state consisted solely of landings reported by fish dealers licensed by Rhode Island. Under the appellant's proposed interpretation of the regulation, sales to out-of-state dealers would qualify the fisher for an exemption without keeping the effort in the fisheries constant, because reported landings for the state would greatly decrease. In addition, subdivisions (2) and (3) in Rhode Island FisheriesRegulation 7.07-7(B) specifically require the sale of summer flounder to a licensed Rhode Island dealer.[2]
Accordingly, the Court finds that the DEM did not apply an erroneous interpretation of the regulations governing exemption certificates. As the regulation requires the sale of summer flounder to have been to a fish dealer licensed by Rhode Island, appellant's arguments regarding the introduction of evidence verifying the status of Bergie's Seafood as a licensed Massachusetts fish dealer need not be addressed.
2. The Admissibility of National Marine Fisheries Service Records
Additionally, the appellant argues that DEM exceeded its statutory authority by relying on records compiled by the National Marine Fisheries Service. Appellant argues that the records should be excluded as incomplete and unreliable because the NMFS records rely on voluntary reporting by fish dealers. DEM argues that the NMFS records are accurate, and the Administrative Procedures Act gives the department the authority to render findings of fact based on such records.
The courts of the United States, both federal and state, have long held that certain types of hearsay evidence are admissible in administrative proceedings. Craig v. Pare, 497 A.2d 316 (R.I. 1985). "Minimum procedural due process does not demand strict conformance to the rules of evidence at a state administrative hearing." Sterling Shoe Co. v. Norberg, 411 F. Supp. 128, 132 (D.R.I. 1976). Section 42-35-10(a) of the Rhode Island General Laws provides that
 "[t]he rules of evidence as applied in civil cases in the superior courts of the state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." (Emphasis added.)
The admission of hearsay in an administrative hearing balances the need for administrative efficiency with the "inherent reliability" of such evidence. DePasquale v.Harrington, 599 A.2d 314, 317 (R.I. 1991).
The records compiled by the National Marine Fisheries Service are "a type commonly relied upon by reasonably prudent men in the conduct of their affairs." See R.I.G.L. § 42-35-10(a). The United States government uses NMFS records to compile date to establish the federal quotas for species of fish. (Tr. at 189). The Atlantic States Marine Fisheries Commission, a group of coastal states from Maine to North Carolina, relies on NMFS records to set state quotas among the member states. (Tr. at 147). The Potomac River Commission and the Commonwealth of Pennsylvania both use the NMFS records to establish their fishing quotas. Id. The use of NMFS records by the federal government and virtually every state on the east coast engaged in the regulation of fisheries attests to the validity of the records.
The appellant also suggests that the NMFS records should be excluded as incomplete, just because the reporting process is voluntary. The Court can find no evidence of unreliability in the record which would warrant exclusion of the NMFS records. The NMFS records are compiled by port agents who have a duty to report landings of all species by fish dealers in the state. (Tr. at 104). The port agents send their data to the Northeast Fisheries Science Center which compiles the data and generates a report for the National Marine Fisheries Service. (Tr. at 217). The process is also not entirely voluntary. April Valliere stated, "[w]e [Division of Fish and Wildlife] had one or two dealers that refused to report and we invoked the director's power authority to require reports." (Tr. at 166).
On review, this Court finds that the use of NMFS records in determining eligibility for an exemption does not exceed the statutory authority of the DEM. Additionally, the Court finds the evidence used by the hearing officer in reaching a decision at the administrative hearing to be competent. The use of NMFS records, which are used by the entire fishing industry, was not in excess of DEM's statutory authority or such an unlawful procedure that substantial rights of the appellant were prejudiced.
 3. Unlawful Procedure by the DEM
The appellant argues that his substantial rights have been prejudiced because the administrative findings, conclusions or decisions were made upon unlawful procedure. Specifically, appellant claims that the hearing officer committed reversible error by not allowing him to testify regarding an alleged landing of summer flounder on or about November 23, 1992. Additionally, appellant claims that the hearing officer committed reversible error by allowing Ms. April Valliere, a principal marine biologist for the Division of Fish and Wildlife, to testify about the licensing requirements for DEM and the Department of Health.
It is well-settled that "[the] party who has the burden of proof on an issue must present all evidence when presenting his case-in-chief." Hodosh v. Ford Motor Co., 477 A.2d 77, 80 (R.I. 1984). However, "irrelevant, immaterial, or unduly repetitious evidence" is to be excluded in an administrative as well as a civil proceeding. G.L. § 42-35-10(a).
The agency's exclusion of testimony concerning the alleged November 23, 1992 landing of summer flounder at Melville, Rhode Island did not constitute unlawful procedure during the administrative hearing. While hearsay evidence is admissible in administrative hearings, its introduction into the record is not mandated by law. The record demonstrates that the appellant was not on the boat during the November 23, 1992 landing. Sean Waite was serving as captain of the boat on that date. (Tr. at 31). Mr. Waite never appeared to testify at the administrative hearing. The appellant never introduced any additional evidence to support his claim. He offered neither ship's logs nor ice or fuel slips. (Tr. at 156-57). Accordingly, the agency's excluding the appellant's hearsay testimony did not constitute unlawful procedure or an error of law such that the substantial rights of the appellant were prejudiced.
The appellant further argues that Ms. Valliere's testimony should have been excluded because her testimony was at the "crux of the hearing matters." Appellant's Memorandum, at 16. Ms. Valliere was accepted as an expert in the collection, tabulation and dissemination of statistics on the commercial fishery harvest. Final Order, at 2. One of Ms. Valliere's responsibilities was to verify that fish dealers were licensed by Rhode Island. (Tr. at 164). Ms. Valliere testified that fish dealers needed to be licensed by the Rhode Island Department of Health. (Tr. at 70). The record shows that her testimony concerning the licensing of fish dealers was strictly limited to the filing of reports with the NMFS. (Tr. at 70-74).
Accordingly, the hearing officer properly excluded the testimony of Jonathan Mayhew concerning the November 23, 1992 landing at Melville, Rhode Island of summer flounder, as it consisted exclusively of hearsay. The admission of Ms. Valliere's testimony was completely proper.
 4. Probative and Substantial Evidence
The appellant argues that the findings of the administrative hearing were clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. The appellant asserts that the hearing officer erred by conferring greater weight on the NMFS records than on his oral testimony. The appellant next argues that the findings of the hearing officer were arbitrary or capricious or characterized by an abuse of discretion. Specifically, appellant argues that the hearing officer wrongly relied on the testimony of April Valliere that Melville, Rhode Island was not a port of entry until 1993. Lastly, appellant asserts that the evidence produced at the hearing necessitates a reversal of DEM's decision. Appellant argues as follows: First, the QS II is a "dragger" capable of fishing for summer flounder. Second, summer flounder is a fish species capable of being landed the entire year. Third, one pound of summer flounder is roughly the equivalent of one fish. Therefore, appellant argues, it is more likely than not that the appellant landed in excess of one pound of summer flounder. So, he concludes, the evidence presented precludes a decision rejecting the exemption to fish summer flounder in excess of the two hundred (200) pound limit.
The Supreme Court of Rhode Island has held, "[i]f competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Barrington SchoolComm. v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992). See also Rocha, 694 A.2d at 725. On review of an administrative agency, the judicial officer does not weigh evidence or assess the credibility or witnesses "but merely reviews the record to deter nine whether there is legally competent evidence to support the administrative decision." Bunchv. Board of Review, Rhode Island Dept. of Employment andTraining, 690 A.2d 335 (R.I. 1995) (quoting Baker v. Board ofReview, Rhode Island Dept. of Employment and Training,637 A.2d 360 (R.I. 1994)).
The weight to be given the testimony of the appellant versus that given the NMFS records is a credibility question, which this Court is precluded from weighing or assessing in its review of the record. See Bunch, 690 A.2d at 335. The appellant argues that the Court wrongly relied on the testimony of April Valliere concerning the status of Melville, Rhode Island as a port of landing in 1992. This testimony was irrelevant to the matter being reviewed by this Court. The regulations required the sale of fish to a fish dealer licensed by Rhode Island. Rhode IslandFisheries Regulation 7.07-7(B). The port of landing is not the central issue in this case, but whether that sale was to a licensed Rhode Island fish dealer. Accordingly, the admission of April Valliere's testimony could not have prejudiced the appellant.
 5. Equal Protection Claim
Appellant also argues that he was denied equal protection of the laws of the State of Rhode Island because he was a resident of the Commonwealth of Massachusetts. In his brief, appellant simply states that he was denied equal protection. The Equal Protection Clause of the Fourteenth Amendment mandates "that no State `shall deny to any person within its jurisdiction the equal protection of the laws.'" Lee v. Life Ins. Co. of North America,829 F. Supp. 529, 541 (D.R.I. 1993) (quoting U.S. Const. amend. XIV § 1). See Cleburne v. Cleburne Living Center,473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The Court further stated in Lee, "[i]t is now a bedrock principle that to prove an equal protection claim, a plaintiff must demonstrate that the defendant acted with discriminatory intent or purpose."Lee, 829 F. Supp. at 541. Furthermore, "`discriminatory purpose'. . . implies that the decisionmaker selected a particular course of action because of its adverse effects upon an identifiable group." Id. (quoting Personnel Administrator ofMassachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)).
The record shows that the appellant was treated no differently than other fishers, nor was he treated differently from other applicants because he was a resident of Massachusetts. Residents of Massachusetts were granted exemptions to land fish beyond the statutory limit. (Tr. at 125). In fact, non-Rhode Island residents hold 36 out of 159 exemptions accounting for 22.6% of all exemptions granted. DEM Brief at 6. Ms. Valliere testified, "[i]f an application came in and the vessel was not in the NMFS database, we went to the next level, where they had to supply further documentation, the same as Mr. Mayhew, he had to apply further documentation." (Tr. at 177). The appellant offered no testimony concerning the application process as it applied to other fishers regardless of port of origin.
The transcript of the administrative hearing and the additional material in the record show that the agency decision did not violate the appellant's constitutional rights. The record shows that the appellant was treated the same as all other applicants. The Court finds the agency decision did not deny the appellant's right to equal protection under the laws of this state.
 6. Failure to Produce Final Decision within Six Weeks
The appellant argues that the AAD (Administrative Adjudication Division) of the DEM failed to submit a written decision within six (6) weeks of the hearing as mandated by the Administrative Rules of Practice and Procedure for the Administrative Adjudication Division for Environmental Matters, hereinafter Administrative Rules. The final Decision was filed on December 8, 1997 and entered as a Final Order on February 20, 1998. In his brief, appellant cites the Administrative Rules which state "(1) [w]ithin six (6) weeks of the hearing or within seven (7) weeks of the Department's filing of an answer if no hearing is held, the hearing officer shall prepare a written decision on the claim." Administrative Rules of Practice andProcedure for the Administrative Adjudication Division forEnvironmental Matters 19.00(f)(1). The appellant argues that the failure to comply with this rule constitutes reversible error.
The Administrative Rule covering Final Decisions is 16.00(b), which states:
 "(b) Final Decisions. Every Final Decision shall be in writing and shall be signed by the Director. The Director may in his/her discretion, pursuant to R.I.G.L. § 42-17-7-6, adopt, modify or reject such findings of fact and/or conclusions of law provided, however, that any such modification or rejection of the proposed findings of fact or conclusions of law shall be in writing and shall state the rationale therefore. Every Final Decision shall contain a determination of every issue of fact or law necessary to the Decision in accordance with R.I.G.L. § 42-35-12."
As the Administrative Rules set no specific time limit on the production and delivery of a final, written Decision, the appellant's argument is without merit. This Court reviews final decisions only, not hearing officer's decisions.
After review of the entire record, the Court finds that the decision of the hearing officer is supported by the reliable, probative, and substantial evidence in the record. The Court further finds that the substantial rights of the appellant have not been prejudiced and that the administrative findings of the DEM do not violate constitutional or statutory authority. The appeal is denied and dismissed. The decision of DEM is affirmed. Counsel shall prepare the appropriate judgment for entry.
[1] The NMFS reports compiled after the initial denial, represent the same information as the original NMFS report, which consisted of an aggregate listing of all vessels landing summer flounder in Rhode Island, but in a different format. The appellant had access to these reports, because he had to grant DEM permission to obtain NMFS records regarding specific landings of the Quitsa Strider II. DEM sought these reports only to ascertain where, if not in Rhode Island, appellant's boat landed summer flounder on April 17, 1992 and November 23, 1992.
[2] The subsections of 7.07-7(B) variously require the fish to have been landed and sold to a "licensed fish dealer in the State of Rhode Island," to a "licensed Rhode Island fish dealer" and to a "licensed fish dealer in Rhode Island." Clarifying amendments to this section were filed with the Secretary of State on December 11, 1996, which made the language uniform by explicitly requiring sale to a "Rhode Island licensed dealer." The amendments became effective on January 1, 1997. R.I.G.L. §42-35-4.