**THE RAKE, Stephen Kohn and Mark Toney**

v.

**Sanford H. GORODETSKY.**

**No. 82–18–Appeal.**

Supreme Court of Rhode Island.

Dec. 3, 1982.

R. Kelly Sheridan, Providence, Rhode Island American Civil Liberties Union, Edwards & Angell, Edward F. Hindle, William R. Landry, Providence, for amicus curiae, Providence Journal Co.

Robert M. Barge, Providence, Rhode Island Legal Services, Inc., for Coalition of Black Leadership, amicus curiae.

Gerard McG. DeCelles, Joseph F. Penza, Jr., Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal from a Superior Court order compelling disclosure of certain records maintained by the Providence police department.[1] At the time this action was instituted the plaintiffs were students at Brown University and editors of a publication known as the *Rake*.[2] The defendant in this case is Sanford H. Gorodetsky who is the Commissioner of Public Safety for the City of Providence and the chief administrative officer of the Providence police department. The Providence Lodge No. 3 of the Fraternal Order of Police, the exclusive bargaining agent for members of the police department, was allowed to intervene pursuant to Rule 24(b) of the Superior Court Rules of Civil Procedure. The Coalition of Black Leadership and the Providence Journal Company were granted leave by this court to file briefs as amici curiae.

In a letter dated June 2, 1980, members of the *Rake* staff requested that the police chief provide them with copies of all Providence police department hearing officers' reports concerning civilian complaints of police brutality. The reports were maintained by the police in compliance with a 1973 consent judgment entered in the United States District Court case of *Coalition of Black Leadership et al. v. Joseph A. Doorley et al.,* Civil Action No. 4523.[3] The consent judgment established a procedure for processing citizen complaints of police misconduct. The procedure provides for an investigation of the incident followed by an evidentiary hearing before a designated officer. This hearing officer then makes written findings of fact with respect to the guilt or innocence of the police officer involved. A copy of the hearing officer's report is sent to the police chief, who then approves or rejects the finding within thirty days. The action of the police chief is marked down on the hearing officer's report, and notice of this decision is sent by certified mail to all the parties involved.

The plaintiffs received no response to their June 2 letter, so they wrote a second letter on July 14, 1980, to defendant Sanford Gorodetsky. In that letter they appealed the police chief's failure to afford them access to the records requested.

In a letter dated July 21, 1980, an attorney for the city replied to plaintiff's request by stating that the police department needed additional time to compile the records requested. After further attempts to obtain the records proved useless, plaintiffs filed a complaint in Superior Court on March 31, 1981, seeking injunctive relief in order to obtain the records. The defendant filed an answer to the complaint alleging that the records sought were not public.

■ The United States Supreme Court has recognized that the public's right to know and have access to information is an essential part of the First Amendment.[4] Through the Freedom of Information Act,[5] Congress has enhanced this First Amendment interest by creating a clear right in the public and the press to have access to information held by the government. *Providence Journal Co. v. Federal Bureau of Investigation,* 460 F.Supp. 762 (D.R.I.1978), *rev'd on other grounds,* 602 F.2d 1010 (1st Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980). Similar-

---

1. The hearing for the preliminary injunction and the trial on the merits were consolidated pursuant to Rule 65(a)(2) of Super.R.Civ.P.

2. The *Rake* is a tabloid newspaper emphasizing investigative reporting. It is published on a quarterly basis at Brown University and distributed in the Providence community.

3. This case was a civil rights action alleging a practice or pattern of brutality on the part of Providence policemen toward the black population.

4. See generally, *Globe Newspaper v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). For a complete list of cases, see *Providence Journal Co. v. F.B.I.,* 460 F.Supp. 762, 776 n. 33 (D.R.I.1978), *rev'd on other grounds,* 602 F.2d 1010 (1st Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

5. 5 U.S.C.A. § 552 (West 1977).

ly, forty-nine of the fifty states have enacted freedom-of-information laws, with Rhode Island's 1979 enactment making it the most recent state to pass such legislation.[6] Today we are presented with our first opportunity to examine this legislation as we are asked to construe various provisions of the Access to Public Records Act of 1979. General Laws 1956 (1977 Reenactment) §§ 38–2–1 through 38–2–12, as enacted by P.L.1979, ch. 202, § 1.

The *Rake*'s request was made pursuant to § 38–2–3, which provides that all records kept on file by any public body shall be made public subject to certain enumerated exceptions. The defendant contends, among other things, that several of these exceptions apply and that therefore the reports should not be disclosed.

In construing a statute for the first time, we look to rules of statutory construction to aid us in our task. *Knuth v. Board of Sewer Commissioners*, 91 R.I. 164, 162 A.2d 278 (1960). One well-established rule is that we must ascertain the intent of the Legislature and effectuate that intendment unless a meaningless or absurd outcome would result. *Berthiaume v. School Committee of Woonsocket*, R.I., 397 A.2d 889 (1979). Fortunately, the Access to Public Records Act, § 38–2–1, provides us with the following stated purpose:

"PURPOSE.—The public's right to access to records pertaining to the policy-making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy-making functions of public bodies and/or are relevant to the public health, safety, and welfare. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy."

Mindful of the stated legislative intent, we now proceed to examine the contentions put forth by defendant.

The principal argument set forth by defendant is that the reports are exempt from disclosure because they fall under the personnel-records exception. This exception exempts:

"All records which are identifiable to an individual applicant for benefits, clients, patient, student, or employee; including, but not limited to, *personnel, medical treatment, welfare, employment security, and pupil records* and all records relating to a client/attorney relationship and to a doctor/patient relationship." (Emphasis added.) Section 38–2–2(d)(1), as amended by P.L.1981, ch. 353, § 5.

The defendant presents us with four reasons why the reports should be included under the above exception. Three of these reasons—that the hearings are arranged by the personnel bureau, that the police department considers the reports to be personnel records, and that the reports are placed in personnel files—are of little persuasive value to this court. In construing a similar provision of the Freedom of Information Act,[7] the United States Supreme Court stated that "non confidential matter was not to be insulated from disclosure merely because it was stored by an agency in its 'personnel' files." *Department of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11, 27 (1976).

Similarly, this court does not consider the reports to be personnel records simply because the police department regards them as such[8] or because the personnel bureau

---

**6.** For a complete discussion of state freedom-of-information laws, see Braverman and Heppler, *A Practical Review of State Open Records Laws,* 49 Geo.Wash.L.Rev. 720 (1981).

**7.** 5 U.S.C.A. § 552(b)(6).

**8.** Major Clark testified that he deemed those reports not considered by the chief to be personnel records, but he did not testify as to the status of the reports that have been approved or disapproved and so marked by the chief. The latter reports are the ones the Superior Court justice ordered disclosed.

conducts and arranges the hearings. If the court allowed the above factors to be determinative of whether or not the reports are personnel records, the purpose of the statute could easily be circumvented. A governmental agency could label all of its records personnel records, leaving nothing accessible to the public. Clearly this is not a result hoped for by those who drafted the legislation.

The defendant asserts in his fourth reason that the reports are recommendations to the chief and as such are more in the nature of personnel records. The defendant further argues that the reports' status as recommendations also allows them to be exempt under the investigatory exception contained in the statute.[9] In making these arguments, defendant appears confused in regard to what was ordered to be disclosed. The Superior Court justice defined the reports as the hearing officer's report with the action of the police chief noted thereon. We are of the opinion that such a report is not a recommendation to the chief but rather represents the final action taken on the matter. We therefore reject defendant's assertion that the reports ordered disclosed are recommendations.

A final point should be made about defendant's general contention that the personnel-records exception applies to this case. The statute requires that the records must be identifiable to an individual applicant in order for the exemption to take effect. In the present case, the reports do not identify the citizen complainants or the police officers because the names of both have been deleted as ordered by the Superior Court justice. Consequently, an important prerequisite for application of the exception has not been met.

■ For the stated reasons we conclude that the reports in question are not exempt from disclosure pursuant to the personnel-record exception, § 38–2–2(d)(1), or the investigatory records exception, § 38–2–2(d)(16).

■ Section 38–2–2(d)(19) of the Rhode Island General Laws provides that "[r]ecords, reports, opinions, information, and statements required to be kept confidential by federal or state law, rule, rule of court, or regulation or by state statute" are not to be considered public. Although it is not clear from his brief that he does so, defendant apparently contends that the consent judgment is a rule of court which prohibits public disclosure of the reports. We disagree for two reasons. First, the consent judgment cannot be considered a rule of court. It is basically a contractual agreement between the parties which is approved by the court. *Strouse v. J. Kinson Cook, Inc.,* 634 F.2d 883 (5th Cir.1981). Second, assuming arguendo that the consent decree is a rule of court, it is not apparent that the decree prohibits public disclosure of the reports. The decree provides that

"[r]ecords of hearings held shall be kept on file in the Bureau of Personnel for a period of two (2) years from the date of original hearing thereon. Same shall be available for inspection by any of the parties to the complaint, or their representatives."

We are not persuaded that such language evinces an intent to preclude public disclosure. Rather, this provision merely makes certain that the parties involved have access to the reports. Our interpretation is supported by the "Statement By the Court" accompanying the consent decree. In commenting on the consent decree and the new policy of handling civilian complaints against police officers, Chief Judge Pettine writes:

"The administration of daily evenhanded justice to the great mass of people, many of whom never reach the courts, demands that such policies be con-

---

**9.** General Laws 1956 (1977 Reenactment) § 38–2–2(d)(16), as amended by P.L.1981, ch. 353, § 5 provides:

"All investigatory records of public bodies pertaining to possible violations of statute, rule or regulation other than records of final actions taken provided that all records prior to formal notification of violations or noncompliance shall not be deemed to be public."

stantly developed by the police command so as to insure a uniform procedure for an entire force. Such policies should be *known to the public* and *subject to public scrutiny* absent a special need for confidentiality." (Emphasis added.)

Accordingly, we find that the consent decree does not provide a basis for prohibiting disclosure.

 Another of defendant's contentions that we feel merits discussion concerns the privacy interests of the parties involved. In the Superior Court defendant argued that the privacy interests of the police officer and of the complaining citizen would be infringed upon if the reports were made public. The Superior Court judge found this argument to be persuasive. He ordered the names of the parties deleted from the reports. Despite this attempt by the Superior Court justice to protect the privacy interests of the parties, defendant again raises this issue on appeal. He contends that the facts set forth in each report could be matched with newspaper accounts of the incident that gave rise to the complaint. The result of this effort would be the identification of the parties involved.[10] While recognizing that the scenario defendant presents us with could occur, we feel that on balance the public's right to know outweighs such a possibility.

 This court will not disturb the findings of a trial justice sitting in equity unless they are clearly wrong or the trial justice misconceived or overlooked material evidence. *Walton v. Baird,* R.I., 433 A.2d 963 (1981); *Kem Manufacturing Corp. v. Howland,* R.I., 401 A.2d 1284 (1979). In the present case, we are of the opinion that the Superior Court justice was not clearly wrong in deciding that the reports should be made public once the parties' names have been deleted.

For the reasons stated above, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

---

10. In his brief defendant appeared to ignore the Superior Court justice's order to delete the names as he continued to make the broad contention that disclosures would result in an invasion of privacy. However, at oral argument he refined his contention as stated above.