**PAWTUCKET TEACHERS ALLIANCE LOCAL NO. 920, AFT, AFL–CIO, and Gerald Resnick**

v.

**John V. BRADY et al.**

**No. 87–412–Appeal.**

Supreme Court of Rhode Island.

April 4, 1989.

Richard A. Skolnik, Linda J. Kushner, Lipsey & Skolnik, Ltd., Providence, for plaintiffs.

Stephen Robinson, Asquith, Merolla, Anderson, Ryan & Wiley, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal from a Superior Court judgment denying the plaintiffs' request for a preliminary and permanent injunction. The plaintiffs, Pawtucket Teachers Alliance Local No. 920, AFT, AFL-CIO,[1] sought to enjoin the defendants from withholding certain records of the Pawtucket School Department. The trial justice found that the plaintiffs had no reasonable probability of success on the merits and denied their prayer for injunctive relief. We affirm.

Before elaborating on the relevant circumstances precipitating this appeal, we shall reiterate our limited scope of review in examining a ruling made by a trial justice while sitting in equity. The decision to grant or deny an injunction is a matter within the sound discretion of the trial court. *Paramount Office Supply Co. v. D.A. MacIsaac, Inc.*, 524 A.2d 1099, 1101 (R.I.1987). In determining whether to issue an injunction, a trial justice should consider four factors: (1) whether the plaintiff has a reasonable likelihood of success on the merits of the case, (2) whether the plaintiff will suffer irreparable harm if the injunction is denied, (3) whether an adequate remedy at law exists, and (4) whether the threatened injury to the plaintiff outweighs the harm to the defendant or the public if the injunction is granted. *See* R. Leavell, J. Love & G. Nelson, *Equitable Remedies, Restitution and Damages* 52–93 (West 4th ed.1986) (articulating standard and compiling case law relating to it from various jurisdictions). Only when

the trial court clearly abuses its discretion will this court reverse a decision denying a request for temporary or permanent injunctive relief. Bearing this standard of review in mind, we turn to the undisputed facts of the instant case.

In September of 1986, the Pawtucket School Committee (the committee) appointed a new principal to head the Varieur Elementary School in Pawtucket. Shortly thereafter, the committee received a series of complaints regarding the operation of the school and the relationship between the principal and the teaching staff. In response to growing parental concerns, the committee authorized a management study of school operations. Frank Toomey, an outside consultant and expert in the field of educational processes, was retained to investigate the situation and to make recommendations relative to any curative actions. Toomey conducted numerous confidential interviews with both the staff and the principal. He summarized his findings in a written report. This study was presented to the committee at an executive session and ordered sealed pursuant to G.L.1956 (1984 Reenactment) § 42–46–7, as amended by P.L.1985, ch. 373, § 1. Thereafter plaintiffs made both oral and written demands upon the committee for production of Toomey's report, but their requests were denied.

Having exhausted all nonlegal avenues, plaintiffs then filed a complaint in the Superior Court under G.L.1956 (1984 Reenactment) chapter 2 of title 38, the Access to Public Records Act (APRA), seeking injunctive relief in order to obtain the report. Section 38–2–3, as amended by P.L.1984, ch. 372, § 2, of APRA grants every individual the right to inspect and copy all records maintained by public entities subject to twenty-two express exceptions contained in § 38–2–2, as amended by P.L.1986, ch. 203,

---

**1.** In January of 1988 Gerald Resnick, a named plaintiff, became a member of the Pawtucket School Committee and moved to withdraw from the case on the grounds that further involvement might create a conflict of interest. Resnick's motion was granted and entered as an order of the court on February 18, 1988. Although Resnick has withdrawn from this appeal, we shall continue to refer to the Pawtucket Teachers Alliance throughout this opinion as plaintiffs.

§ 1.[2] In denying plaintiffs' claim for equitable relief, the trial justice concluded that the report came within the personnel-record exception of § 38–2–2(d)(1) and therefore exempted it from public access. We agree.

With the passage of chapter 2 of title 38, the Rhode Island Legislature enhanced the First Amendment right of the public and the press to know and have access to information held by various public agencies. *The Rake v. Gorodetsky*, 452 A.2d 1144, 1146–47 (R.I.1982). The stated purpose of the act provides:

> "The public's right to access to records pertaining to the policy-making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy-making functions of public bodies and/or are relevant to the public health, safety, and welfare. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy." Section 38–2–1.[3]

We are mindful that the basic policy of the act is in favor of disclosure. Survey, *Administrative Law, Police Brutality Records Not Exempt From Access to Public Records Act*, 18 Suffolk U.L. Rev. 137, 139 (1984). However, the dual purpose of APRA makes clear that the Legislature did not intend to bestow upon the public *carte blanche* access to all publicly held documents. The Legislature's desire to limit the accessibility of certain documents in order to protect individuals from unwarranted invasions of privacy and to avoid the disclosure of confidential information is further evinced by the numerous exemptions contained in § 38–2–2. *Hydron Laboratories, Inc. v. Department of Attorney General*, 492 A.2d 135, 137 (R.I.1985). At issue in the present case is the personnel-records exception, § 38–2–2(d)(1), which exempts from public disclosure

> "[a]ll records which are identifiable to an individual applicant for benefits, clients, patient, student, or employee; including, but not limited to, *personnel*, medical treatment, welfare, employment security, and pupil records and all records relating to a client-attorney relationship and to a doctor-patient relationship." (Emphasis added.)

The plaintiffs argue that Toomey's report is a public document subject to the disclosure requirements of APRA. The report pertains to school operations and educational concerns, plaintiffs argue, rather than to the personnel records of any individual. We are unpersuaded. In *The Rake, supra,* this court considered whether the personnel-records exception of APRA insulated the city of Providence from disclosing certain reports to a news-gathering entity. In that case, a university newspaper sought access to records maintained by the Providence police department relating to civilian complaints of alleged police brutality. Such reports represented the final

---

**2.** General Laws 1956 (1984 Reenactment) § 38–2–2(d), as amended by P.L.1986, ch. 203, § 1 defines "public records" as follows:

> " 'Public record' or 'Public records' shall mean all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, or other material regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency."

The statute then lists twenty-two exceptions which are not deemed "public" for the purpose of accessibility.

**3.** Because APRA generally mirrors the Freedom of Information Act, 5 U.S.C.A. § 552 (West 1977), we find federal case law helpful in interpreting our open record law. We note, however, that unlike APRA the federal act's personnel-records exemption, § 552b(c)(6), excludes from public access information that constitutes a *"clearly* unwarranted invasion of privacy." (Emphasis added.) In examining two separate exemptions under § 552b, the United States Supreme Court noted that the omission of the word "clearly" from one exemption was a meaningful distinction. *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 629–30 n.13, 102 S.Ct. 2054, 2063 n.13, 72 L.Ed.2d 376, 388–89 n.13 (1982).

action taken by the police chief on these matters. We noted that the plain language of APRA required the records in issue to identify a specific individual in order for the personnel-record exemption to apply. Balancing the privacy interests of the police officers identified in the reports against the public's right to know this information, we concluded that public access to the records was proper after the parties' names had been deleted. The public's right to know under APRA, we stated, outweighed the fortuitous possibility that police officers' identities might be ascertained by matching the reports with newspaper accounts of the incidents.

Unlike the situation in *The Rake*, the report at issue in the present case specifically relates to the job performance of a single readily identifiable individual. Even if all references to proper names were deleted, the principal's identity would still be abundantly clear from the entire context of the report. Despite this fact, plaintiffs argue that the report reveals no confidential information because the media provided extensive coverage of the controversy and the public knew of the newly appointed principal's identity and the resulting administrative and morale problems. The public's right to know the report's contents, plaintiffs claim, clearly outweighs the principal's right to privacy in these circumstances. We disagree.

Section 38–2–2 is designed to protect from public disclosure information which is highly personal and intimate in nature. The statute specifically exempts personnel records. In determining whether documents constitute a personnel file, we examine the report in light of the particular circumstances of each case. Generally we consider whether the report in issue possesses attributes ordinarily found in personnel files. These attributes include information highly personal in nature, such as work-performance evaluations, past criminal convictions, and employment-related disciplinary matters, *Department of the Air Force v. Rose*, 425 U.S. 352, 376–77, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11, 30 (1976), as well as less intimate data, such as "place of birth, date of birth, date of marriage, employment history, and comparable data * * *." *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 600, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358, 364 (1982). In the case at bar, the committee sanctioned an investigation into complaints regarding school operations and poor faculty relationships under the leadership of a new principal. Toomey's report, unlike the records in *The Rake*, contained recommendations pertaining to an ongoing investigation rather than a final action taken by the committee on the matter.[4] The committee then discussed the results of this report during a properly convened executive session. All documents pertaining to these discussions were ordered sealed in accordance with § 42–46–7. The trial justice, after examining the report in camera, concluded that it was primarily a personnel record.

We are of the opinion that the trial justice neither misconceived nor overlooked any material evidence in concluding that the report was exempted from public access under the personnel-records exception of APRA. Investigations into administrative and morale problems at workplaces necessarily implicate personal and intimate topics of discussion that are inherently related to personnel matters. Moreover, we note that the principal has since been transferred to a different school. We believe that the release of Toomey's report in these circumstances would constitute an unwarranted invasion of a person's privacy.

The potential for harm resulting from disclosure of this type of information clearly outweighs any perceived benefit that would accrue to plaintiffs. If we were to order the release of Toomey's report in these circumstances, this court would effectively license the public to review the performance of any principal or teacher under the guise of an investigation into school operation and administration. Such

---

**4.** Because we dispose of plaintiffs' appeal on the threshold question of whether the report is a personnel file under the statute, we need not address defendants' argument that Toomey's report falls under the investigatory-records exception of § 38–2–2(d)(16).

a result would clearly be in derogation of public policy and directly contravene the express language of APRA. Consequently we conclude that the trial justice committed no abuse of discretion in denying plaintiffs' request for temporary and permanent injunctive relief.

The plaintiffs assert as their final argument that the trial justice erroneously placed the burden of proof on them to show that the report was accessible. An examination of the lower court's decision, however, reveals that the trial justice succinctly stated and then properly allocated the burden of proof under § 38–2–10. We therefore reject the plaintiffs' contention as without merit.

For the reasons enunciated above, the plaintiffs' appeal is denied and dismissed. The judgment appealed from is affirmed. The papers in this case are remanded to the Superior Court.