EDWARD A. SHERMAN PUBLISHING
COMPANY and Providence Journal
Company,

v.

E. Richard CARPENDER et al.

No. 94–63–A.

Supreme Court of Rhode Island.

July 3, 1995.

Joseph V. Cavanagh, Jr., Karen A. Pelc-zarski, Blish & Cavanagh, Providence, for plaintiffs.

Gregory P. Piccirilli, Sciacca & Piccirilli, Cranston, for defendants.

OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal by the plaintiffs, Edward A. Sherman Publishing Company and the Providence Journal Company (plaintiffs or plaintiff newspapers), from a summary judgment entered by the Newport County Superior Court in favor of the defendants, the school committee of the town of Portsmouth (defendants or school committee). The plaintiffs' complaint was brought pursuant to G.L.1956 (1990 Reenactment) § 38–2–1, the Access to Public Records Act. The plaintiffs seek to learn the identities of twenty-eight teachers within the Portsmouth school system who received written notification, in accordance with the requirements of G.L.1956 (1988 Reenactment) § 16–13–2, that they had not been renewed for employment for the 1993–1994 school year. For the reasons that follow, the judgment below granting the defendants' cross-motion for summary judgment is affirmed.

On February 25, 1993, plaintiff newspapers filed a complaint against defendants E. Richard Carpender, William L. Douglas, Jr., Kathryn M. Dyer, Irene A. Frazzano, Duncan Ingraham, Monica K. Magliocco, and Mark M. Thayer, in their representative capacities as members of the School Committee of the Town of Portsmouth. The plaintiffs alleged that defendants had denied plaintiffs' request for access to certain public records identifying teachers whose contracts the school committee had voted not to renew. The plaintiffs requested declaratory judgment, a writ of mandamus, and injunctive relief against the committee, seeking the names of the twenty-eight teachers who were sent written notices of nonrenewal by defendants in February of 1993.

The defendants' timely answer stated that they would continue to deny public access to the requested records until the teachers were terminated from employment. On September 22, 1993, plaintiffs moved for summary

judgment, and on the following day, defendants filed their objection and cross-motion for summary judgment. At a hearing on December 6, 1993, the trial court, finding no genuine issue of material fact, granted the school committee's motion, denied plaintiffs' motion, and entered judgment for the committee.

The events that led to the filing of plaintiffs' suit were as follows. On February 23, 1993, the school committee held a public meeting, wherein, in anticipation of budgetary constraints it voted not to renew the contracts of twenty-eight teachers in the Portsmouth school system. On that same day, pursuant to § 16–13–2, the school committee sent written notification of its nonrenewal-of-the-contract vote to each affected teacher. At that school committee meeting, an employee of one of plaintiff newspapers formally requested of defendants disclosure of the records that would identify the teachers whose contracts had not been renewed. That plaintiff's request was denied by both the school committee and the superintendent of the Portsmouth school system. The defendants' reasoning for the denial of plaintiff's request was that teachers who received notices of nonrenewal of their contracts remained employed by the school committee until the end of the 1992–1993 school year. Conceivably, during that time recission of the school committee's vote for one or more of the teachers would be a possibility. As a result, defendants refused to release records regarding the twenty-eight teachers until they were no longer employed, that is, until they were terminated by the Portsmouth school committee.

The plaintiffs argue that written notification to the twenty-eight teachers regarding nonrenewal of their contracts, pursuant to the teachers' tenure law, § 16–13–2, constitutes final governmental action. As such, they contend that under both the Access to Public Records Act (APRA) and relevant case law, the requested records should have been disclosed because they pertain to policymaking functions of a public body regarding the health, safety, and welfare of Rhode Islanders. They further contend that the requested records do not fall within any exemption under APRA. Thus they assert that the trial justice's grant of summary judgment in favor of defendants constitutes plain error.

The defendants argue that the date of termination or final action for the twenty-eight teachers who received nonrenewal notices is not the date of notification but rather the last day the teachers work for the school committee. According to defendants, that day is, at the very least, the last day of the school year in June. Therefore, they argue, since there was no date of termination for the twenty-eight teachers in the present case, there were no records that could be required to be made public under APRA. The defendants conclude that the trial justice's order granting their motion for summary judgment was correct. We agree with defendants' position.

The sole issue before the court is whether the name of a teacher who receives notice of a layoff is exempt from disclosure under APRA until that teacher's employment is actually terminated. Under APRA, all records that are identifiable to an individual employee, including personnel records, are not deemed public records. Section 38–2–2(d)(1), as amended by P.L.1991, ch. 263, § 1. The only exceptions to this rule are, "with respect to employees, the name, gross salary, salary range, total cost of paid fringe benefits, gross amount received in overtime and other remuneration in addition to salary, job title, job description, dates of employment and positions held with the state or municipality, work location, business telephone number, the city or town of residence, and date of termination shall be public." *Id.* In *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1136 (R.I.1992), this court stated:

> "The unambiguous language embodied in § 38–2–2(d)(1) makes it unmistakably clear that the Legislature intended to limit the public's access not only to personal information contained in an employee's personnel file but also to any record that identified a particular employee. * * * The fact that the lists relate to readily identifiable individual employees against whom no action has been taken regarding their employment status is sufficient to

deny plaintiffs access to the lists under § 38–2–2(d)(1) as amended."

It is clear that only when an employee is actually laid off from employment do documents that indicate the date of layoff become public.

The specific issue in this case, then, is the question of when is the "date of termination" for the twenty-eight teachers who received nonrenewal notices from the school committee. We must decide the narrow question of whether notification of nonrenewal of a teacher's contract as required under the teacher-tenure law constitutes final governmental action under APRA. We submit that it does not.

At the earliest, that date of termination would be the last day of school during the month of June. In this case, since all the nonrenewal notices were rescinded prior to any interruption in the teachers' employment, there obviously was no "date of termination" to be made public.

Under Rhode Island law, school systems are required to serve notice on teachers prior to March 1 that they will be laid off in a subsequent school year. Section 16–13–3, as amended by P.L.1992, ch. 170, § 1 provides:

> "Whenever a tenured teacher in continuous service is to be dismissed, the notice of such dismissal shall be given to the teacher in writing on or before March 1st of the school year immediately preceding the school year in which the dismissal is to become effective."

Thus, teachers must receive notice prior to March 1 that their services will not be needed for the subsequent school year.

Because of the mandates of these two statutes, defendants provided layoff notices to the twenty-eight teachers prior to the March 1 date. Typically, a school committee is uncertain in February of any given year what its budgetary picture will be for the ensuing fiscal year. As a result, in order to protect its right to lay off teachers for the subsequent school year, a school committee generally sends out layoff notices to more teachers than will actually be laid off. Then, as its budgetary picture becomes more clear, a school committee often rescinds these layoff notices prior to the school year's end in June. If a school committee does not rescind the layoff notices prior to the end of the school year, teachers are deemed laid off as of the end of the school year. At that time, documents indicating the "date of termination" for these teachers must be made public.

Well-established rules of statutory construction delegate to this court the position of final arbiter on questions of statutory construction. *Krikorian v. Rhode Island Department of Human Services,* 606 A.2d 671, 675 (R.I.1992); *D'Ambra v. North Providence School Committee,* 601 A.2d 1370, 1374 (R.I.1992). In *Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1050 (R.I.1994), this court stated that:

> "our primary task in construing a statute is to attribute to the enactment the meaning most consistent with its policies and with the obvious purposes of the Legislature * * * by viewing the statute in light of the circumstances that motivated its passage."

The purpose of APRA is clearly stated in the statute:

> "The public's right to access to records pertaining to the policy-making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy-making functions of public bodies and/or are relevant to the public health, safety, and welfare. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy." Section 38–2–1.

The legislative history available for APRA is brief. This act became law in 1979, and at that time the pertinent section, § 38–2–2(d)(1), read as follows:

> "(d) * * * For purposes of this chapter, the following records shall not be deemed public:

(1) All records which are identifiable to an individual applicant for benefits, clients, patient, student, or employee; including but not limited to, personnel, medical treatment, welfare, employment security, and pupil records and all records relating to a client/attorney relationship and to a doctor/patient relationship." P.L.1979, ch. 202, § 1.

In June 1991, the Legislature deleted the final period after "doctor/patient relationship" and added the following text to the original law:

"and all personnel or medical information relating to an individual in any files, including information relating to medical or psychological facts, personal finances, welfare, employment security, student performance, or information in personnel files maintained to hire, evaluate, promote or discipline any employee of a public body; *provided, however with respect to employees, the name, gross salary, salary range, total cost of, paid fringe benefits, gross amount received in overtime and other remuneration in addition to salary, job title, job description, dates of employment and positions held with the state or municipality, work location, business telephone number, the city or town of residence, and date of termination shall be made public.*" (Emphasis added.) P.L. 1991, ch. 208, § 1.

In *The Rake v. Gorodetsky*, 452 A.2d 1144 (R.I.1982), the plaintiffs, Brown University students and editors of the Rake newspaper, requested Providence police department hearing officers' reports regarding civilian complaints of police brutality. This court upheld the trial justice's decision to make the requested reports public. The defendant had argued that the reports were prepared by the personnel bureau, were put into personnel files, and should be exempted. This court determined that the requested reports were not personnel records simply because the police department regarded them as such or because the personnel bureau was the body that arranged and conducted the hearings. *Id.* at 1147–48. This court then stated that approval or rejection by the police chief of the hearing officers' finding within thirty days as required by law and notice of this decision to affected parties constituted final action. *Id.* at 1148.

The defendant had also contended that the privacy interest of the police officer and the complaining citizen would be infringed on if the reports were made public even though the names of the parties were ordered deleted. *Id.* at 1149. This court reasoned that the statute required that the records must be identifiable to an individual applicant in order for the exemption to take effect. Although we acknowledged that the parties involved could be identified by matching the facts of the reports to newspaper accounts of the incidents, we determined that "on balance the public's right to know [outweighed that] possibility." *Id.*

In *Pawtucket Teachers Alliance Local No. 920 AFT, AFL–CIO v. Brady*, 556 A.2d 556 (R.I.1989), the teachers' union brought an action for injunctive relief to obtain a management study regarding elementary school operations in general and, in particular, the job performance of the school principal. In upholding the trial justice's decision to deny injunctive relief to the plaintiffs, this court stated that the Legislature did not intend "to bestow upon the public *carte blanche* access to all publicly held documents." *Id.* at 558. This case was distinguishable from *The Rake* because the report at issue related directly to the job performance of a single readily identifiable individual. Unlike the reports in *The Rake*, which constituted final action by the police chief on brutality complaints, the report in *Pawtucket Teachers Alliance* contained recommendations pertaining to an ongoing investigation by the committee. 556 A.2d at 559. We stated that in determining whether documents constituted personnel records and are thus exempt by statute, we would examine the records in light of the particular circumstances of each case. *Id.*

Following *Pawtucket Teachers Alliance,* we decided *Providence Journal Co. v. Kane,* 577 A.2d 661 (R.I.1990). In that case the Providence Journal requested access to state employee records from the director of the department of administration. The Journal asked for a long list of information including employment history, qualifications, job classi-

fication, relationship to the civil service system, work schedule, pay, and overtime history. *Id.* at 661. The defendant refused this request but offered instead to release the names of the state employees, their position titles, their agency assignments, their salary rates, and their dates of employment. The plaintiffs rejected this offer and filed an action for declaratory judgment. We upheld the trial justice's ruling that the requested records were not public records because they uniquely identified state employees. *Id.* at 663–64. We held that no right of access to the records existed under state law. *Id.* at 664.

Immediately following the *Kane* decision, the General Assembly amended APRA during the 1990–1991 legislative session. That amendment, as set forth above, contained information regarding individual state employees that could be made public. This court's only opportunity to date to interpret the impact of this amendment on APRA was in *Providence Journal Co. v. Sundlun,* 616 A.2d 1131 (R.I.1992). At issue in *Sundlun* were three layoff lists of state employees prepared by the Governor's office. In March 1991 the Governor's staff developed a list of employees who would receive layoff notices (list No. 1). *Id.* at 1133. The Governor never implemented these layoffs and instead agreed with the labor-union representatives to a wage cut in lieu of the proposed layoffs. *Id.*

Later, the Governor developed a second list of employees who would be laid off (list No. 2). *Id.* As a result of what is known as the "bumping process," more senior employees who had received layoff notices had the right to displace less senior employees in state government. *Id.* Ultimately, there was a final list of employees who were actually to be laid off from state employment (list No. 3). *Id.* The question in *Sundlun* became which of the three lists, if any, was subject to disclosure under APRA.

This court held that lists No. 1 and No. 2 were not public records because they did not result in the ultimate termination of any employees. *Id.* at 1135. Although each employee on those lists received a layoff notice, the layoffs were not final. The employees on

the first list were not laid off because the state employees' union agreed to a wage cut. Some employees on the second list had the right to "bump" less senior employees so that they were not actually laid off either. Only the third list, which resulted in actual layoff of employees, was to be made public.

In justifying our decision, we stressed the literal reading of the statutory exemption in APRA:

"There is no question that pursuant to the APRA, plaintiffs are not entitled to have access to lists No. 1 and 2. First and foremost, § 38–2–2(d)(1) explicitly exempts from disclosure records identifying an employee. It is not until an employee has been terminated from his or her employment that the last proviso of § 38–2–2(d)(1) becomes operative and, in effect, authorizes the release of the names of those terminated employees to the public." *Sundlun,* 616 A.2d at 1135.

Citing *Pawtucket Teachers Alliance v. Brady,* we noted that although APRA was enacted to enhance the public's access to government documents, the statute was also intended to protect from public disclosure highly personal and intimate information about employees. 616 A.2d at 1135. We similarly cited in *Sundlun, Providence Journal Co. v. Kane,* which held that the unambiguous terms of § 38–2–2(d)(1) exempted from disclosure all records identifiable to an individual employee since such documents are not defined as public records under the language of APRA.

With respect to list No. 3, we found in *Sundlun* that that list was a public record *when it became final.* We stated:

"It is with the same guides of literal meaning and statutory construction that we conclude that plaintiffs are entitled to gain access to list No. 3 when it becomes final. Section 38–2–2(d)(1) as amended provides for disclosure of, among other information, employees' names and their dates of termination." *Sundlun,* 616 A.2d at 1136.

If the layoff list did not result in an employee's actual termination, there was no "date of termination" for that employee to be made

public. It is for the same reasons that *Sundlun* is controlling in this case.

With respect to this case, the list of teachers who received notices of nonrenewal is similar to list No. 2 in *Sundlun.* The notices given were not final; many teachers who received notices had the right to "bump" less senior teachers. Moreover, the layoffs could be and, in this case, were rescinded prior to the end of school. The layoffs did not become final until the teachers were no longer working for or being compensated for work performed for the school committee. Lastly, the public interest in knowing the names of laid-off teachers is protected by disclosure of documents indicating those teachers who are actually laid off. As we stated in *Sundlun:*

"[N]o public interest is served by disclosing the names of employees who have not been laid off from state employment. Any state employee named in a potential layoff list is entitled to his or her privacy *until such time as that final action is taken which results in separation from state employment.*" (Emphasis added.) 616 A.2d at 1136.

The Access to Public Records Act does not require the disclosure of names of teachers who receive notice prior to March 1 that their contracts for the ensuing school year shall not be renewed until the layoffs become final at the end of the school year. In this case the teachers were not discharged; they were only notified that their contracts were not to be renewed.

A notice of nonrenewal is not to be construed as "final government action" for purposes of § 38–2–2(d)(1). The clear and unambiguous language of APRA does not require the disclosure of the name of a teacher who receives a layoff notice until that teacher is actually terminated from his or her employment.

For the foregoing reasons the plaintiffs' appeal is denied and dismissed, the defendants' cross-motion for summary judgment is affirmed, and the papers of the case are remanded to the Superior Court.

BOURCIER, J., did not participate.