DECISION
In cross-motions for summary judgment, the parties submit divergent interpretations of the Rhode Island Access to Public Records Act, R.I.G.L. 38-2-1 et seq. (APRA). The plaintiff, a community action group called Direct Action for Rights and Equality (DARE), asserts that it has under APRA a virtual carte blanche access to all Providence Police Department records pertaining to civilian complaints of police misconduct, whereas the defendant, Providence Chief of Police Bernard E. Gannon (the Chief) argues that DARE may obtain only those records of hearings that have gone to final determination and have been acted upon by the Chief, and then only with the name of the respondent police officer redacted. The plaintiff, however, does not seek the names of police officers accused of misconduct and seems to concede that the law prohibits the disclosure of identities, an issue the court discusses below. The parties also disagree over the costs of photocopying and redaction.
There is no genuine issue as to any material fact, and therefore the court's role is to determine if one of the moving parties is entitled to judgment as a matter of law.
Prior to 1979 and the enactment of P.L. 1979, ch. 202, there was no APRA, and access to government records by either interested members of the public or the press was governed by the common law; and prior to 1972, the Providence Police Department did not have a formal mechanism for processing civilian complaints, but this was changed when the city entered into a consent judgment in the United States District Court matter ofCoalition of Black Leadership et al. v. Joseph A. Doorley et al., C.A. No. 4523. In a decision that provides some guidance for the resolution of this litigation, Justice Murray recounted the practical consequences of the Coalition of Black Leadership
judgment:
 The consent judgment established a procedure for processing citizen complaints of police misconduct. The procedure provides for an investigation of the incident followed by an evidentiary hearing before a designated officer. This hearing officer then makes written findings of fact with respect to the guilt or innocence of the police officer involved. A copy of the hearing officer's report is sent to the police chief, who then approves or rejects the findings within thirty days. The action of the police chief is marked down on the hearing officer's report, and notice of this decision is sent by certified mail to all the parties involved. The Rake v. Gorodetsky, 452 A.2d 1144, 1146 (RI 1982).
The Coalition consent judgment continues to control procedures for processing civilian complaints within the City of Providence Police Department, and the Chief saw fit to attach pertinent portions of the rescript of Chief Judge Pettine's decision in that matter to his Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment.
In its Complaint, DARE claims access under the APRA to four categories of documents (Complaint-para. 12):
 (a) Every Providence police civilian complaint report (from [sic] 210) filed within the Providence Police Department from 1986 to present;
 (b) A listing of all findings from investigations that were conducted by the Bureau of Internal Affairs in reference to all police civilian complaint reports (from [sic] 210) on record from 1986 to the present;
 (c) All reports made by the Providence Police Department hearing officers regarding their decisions from the findings of investigations conducted regarding Providence police civilian complaints (form 210) from 1986 to the present;
 (d) Reports on all disciplinary actions that have taken place as a result of recommendations made by the hearing officer's division from 1986 to the present.
DARE had been pressing to obtain this information since at least September 17, 1993, and on November 28, 1994 the Providence City Solicitor, Charles R. Mansolillo, Esq., conveyed Chief Gannon's response. As to requests (a) and (b), the City Solicitor wrote that "these records are not deemed publicly accessible under R.I. Gen. Laws § 38-2-2 (d)(16)", and he rejected request (d) on the grounds that "these records are not deemed publicly accessible under R.I. Gen. Laws § 38-2-2 (d)(1)." As to request (c), Solicitor Mansolillo indicated: "these records are publicly accessible in a redacted form (i.e. information which identifies citizen complainants or police officers is blacked-out wherever it appears on a record). Records exist from 1988 to the present." The defendant has adhered to this position throughout the litigation, but has added to his claim of statutory exemption R.I.G.L. § 38-2-2 (d)(4) to go along with his earlier reliance on Sections 1 and 16.
In enacting the Rhode Island Access to Public Records Act, the legislature expanded the common law right but also exempted from public access certain categories of records, most of which "would constitute an unwarranted invasion of personal privacy" (R.I.G.L. § 38-2-1).[1]
The purpose of the act is stated clearly:
 The public's right to access to records pertaining to the policy-making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy making functions of public bodies and/or are relevant to the public health, safety, and welfare. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy. (R.I.G.L. § 38-2-1).
The defendant relies on the following pertinent language of R.I.G.L. § 38-2-2 (d) as delineating types of records that "shall not be deemed public":
 (1) All records which are identifiable to an individual applicant for benefits, clients, patient, student or employee; including but not limited to, personnel, medical treatment, welfare, employment security, and pupil records and all records relating to a client/attorney relationship and to a doctor/patient relationship and all personal or medical information relating to an individual in any files, including information relating to medical or psychological facts, personal finances, welfare, employment security, student performance, or information in personnel files maintained to hire, evaluate, promote or discipline any employee of a public body; . . . .
 (4) All records maintained by law enforcement agencies for criminal law enforcement; and all records relating to the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal investigation by any law enforcement agency but only to the extent that the disclosure of such records or information (a) could reasonably be expected to interfere with investigations of criminal activity or with enforcement proceedings, (b) would deprive a person of a right to a fair trial or an impartial adjudication, (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (d) could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority or any private institution which furnished information on a confidential basis, or the information furnished by such a confidential source, (e) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions or (f) could reasonably be expected to endanger the life or physical safety of any individual; provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public; . . . .
 (16) All investigatory records of public bodies pertaining to possible violations of statute, rule or regulation other than records of final actions taken provided that all records prior to formal notification of violations or non-compliance shall not be deemed to be public.
The APRA expanded the common law right of access by individuals and groups to governmental records, and therefore it must be interpreted liberally. ". . . where the statute is remedial, one which affords a remedy, or improves or facilitates remedies already existing for the enforcement or rights of redress of wrongs, it is to be construed liberally."Ayers-Schaffner v. Solomon, 461 A.2d 396, 399 (R.I. 1983). See alsoCity of Warwick v. Almac's, Inc., 442 A.2d 1265, 1272 (R.I. 1982).
What was the common law in Rhode Island? The earliest reported case appears to be In re: Caswell, 18 R.I. 259 (1893). Caswell, the Clerk of the Washington County Superior Court, sought direction from the Rhode Island Supreme Court as to whether he had to comply with a newspaper reporter's request to be furnished with the copies of all proceedings in a divorce matter that had recently concluded. In moving toward its answer in the negative, the Supreme Court discussed the common law:
 At common law, every person is entitled to the inspection, either personally or by his agent, of public records (this term including legislative, executive and judicial records, etc.), provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or records sought can furnish evidence or necessary information. It is not essential, however, `that the interest be private, capable of sustaining a suit or defense on his own personal behalf, but it will be sufficient that he act in such suit as the representative of the common or public right' (citation omitted) 18 RI, at 259.
The Supreme Court went on to observe that "By statutes of the United States [citations omitted], and also of several of the states, the necessity of interest has been done away with, and any person may examine public records, and take memoranda therefrom," 18 RI, at 259, but declared that because Rhode Island had no such statute, "the common-law rule above stated . . . is doubtless in force" 18, R.I. at 259. In language that evinces a commitment to rational and focused public discourse but which would undoubtedly horrify contemporary journalists and talkshow hosts, the 1893 Court declared that government records "should not be used to gratify private spite or promote public scandal." 18 RI, at 259. See also Daluz v. Hawksley, 116 R.I. 49 (R.I. 1976); and Nolan v. McCoy, 77 R.I. 96 (R.I. 1950).
In 1979, with the enactment of the APRA, the legislature eliminated the common law requirement of an interest in the prosecution or defense of a lawsuit — indeed of any articulable interest at all — as a prerequisite to gaining access to public records.
In the instant matter, DARE, through counsel, has stated that as an organization of concerned citizens it wishes to examine and monitor police behavior in the community, ostensibly to identify any police officers engaged in unlawful conduct and to determine whether reported instances of such conduct are being properly addressed by police department administrators. This may well be a sensible concern, but it is superfluous in light of the legislature having jettisoned the requirement of an interest in a lawsuit. The defendant Chief, for his part, refuses to turn over all but one narrow category of records on the grounds that his doing so would have him violate the strictures of the exception provisions of APRA. His primary concern appears to be that to give the requested records and names contained therein of both complainants and police officers would "constitute an unwarranted invasion of personal privacy." R.I.G.L. § 38-2-1; §38-2-2 (d)(4)(c). The Chief does not claim that disclosure of the information sought would in any way interfere with "investigations of criminal activity", "deprive a person of their right to a fair trial or impartial adjudication", "reasonably be expected to endanger the life or physical safety of any individual", "reasonably be expected to disclose the identity of a confidential source", or any of the other limitations set forward in R.I.G.L. § 38-2-2 (d) generally or in (d)(4) in particular.
All information being sought by the plaintiff arises out of police officers performing their duties in public, and obviously in the view of one or more members of the public, some of whom decided to pursue civilian complaints with the police department. Indeed, when a police officer performs those duties that bring him or her into contact with a member of the public, there can be no reasonable expectation by the officer that the encounter will be private. DARE is not concerned with whether a police officer is regularly late to roll call, does not maintain his or her uniform properly or litters the station house; rather the plaintiff citizens group is concerned about the interaction of police officers with members of the community in the community. The absence of a reasonable expectation of privacy in such interaction is a factor that this court considers significant. See, e.g., Rural Housing Alliance v. United States Department ofAgriculture, 498 F.2d 73, 77-78 (fn 21) (D.C. Cir. 1974).
In colloquy with the court on November 21, 1995, during argument on these cross-motions, counsel for Chief Gannon was unable to give an adequate explanation how any legitimate interest of the defendant and the City of Providence would be advanced by not disclosing the identity of a police officer found guilty after a civilian complaint hearing of engaging in brutality, sexual harassment or racial slurs. In adopting this position of non-disclosure, the defendant relied in part on the exemption found in R.I.G.L. § 38-2-2 (d)(1), as paraphrased by his attorney: "to prevent from disclosure information used to discipline employees, personal and private information used to discipline employees." (November 21, 1995 hearing-Tr. — p. 8.) The city attorney conceded, however, that if the incident complained of, because of its egregious nature or otherwise, had already found its way into the media, the city's claim of a privacy interest on the part of the offending officer would be severely weakened.
From the viewpoint of this justice, however, nothing has been submitted that would lead to the conclusion as a matter of law that the disclosure of the identity of a police officer, along with the factual background leading to a hearing officer's decision that the officer was guilty of the excessive use of force, racial slurs, sexual harassment, drunkenness on duty or a host of other types of police misconduct, would in any way constitute the "unwarranted invasion of personal privacy" about which the legislature is properly solicitous. If the people in a free and democratic society are to have access to governmental records which are "relevant to the public health, safety and welfare," how can these records help the people in their exercise of sovereignty if they are prohibited for all time from learning the identity of the brutal or racist police officer within their community? How can the majority of decent and dedicated police officers count on the support of a community that is forever barred from learning the results of civilian complaint hearings, or indeed whether the civilian complaints were ever addressed in the first place? The position taken by the Chief in this matter logically permits non-action on the part of the Providence Police Department on civilian complaints to go undetected or unreported even in the face of requests such as those made by the plaintiff in this case.
The defendant relies on The Rake v. Gorodetsky,452 A.2d 1144 (R.I. 1982) to support its position that it must turn over only those records of civilian complaint hearings that have been concluded and so noted by the Chief, and then only with redaction. I do not read The Rake as compelling this result.
In The Rake, a student newspaper sought "a Providence Police Department hearing officer's reports concerning civilian complaints of police brutality", 452 A.2d, at 1146, which is at least one type of record being sought in this matter. The Supreme Court determined that it did not have to reach the issue of redaction and the claimed exemption under then R.I.G.L. § 38-2-2 (d)(1) relative to "records identifiable to an individual" because the trial judge had directed that the names of both citizen complainants and police officers be deleted from the records. 452 A.2d, at 1148. Additionally, the Rhode Island Supreme Court rebuffed the city's claim of an investigatory records exception pursuant to R.I.G.L. § 38-2-2 (d)(16). 452 A.2d, at 1148 of significance to the instant matter was the rejection by the Supreme Court of the defendant Public Safety Commissioner's argument that the student newspaper could match police department records with newspaper accounts and thus identify the parties involved. The Supreme Court held that the public's right to know must prevail:
 While recognizing that the scenario defendant presents us with could occur, we feel that on balance the public's right to know outweighs such a possibility. 452 A.2d at 1149.
Nearly 15 years has passed since The Rake was decided, and not only has APRA been amended but the advent of the home video camera and its use in chronicling police conduct, sometimes in celebrated cases, has contributed to a heightened public awareness and demands for official accountability about police conduct.
In essence, the defendant contends that the language in R.I.G.L. § 38-2-2 (d)(1), which provides, inter alia, that "information in personnel files maintained to hire, evaluate, promote or discipline any employee of a public body" are not to be deemed public records, supercedes and overrides the legislative policy set forward in R.I.G.L. § 38-2-1, namely, that only "an unwarranted invasion of personal privacy" can thwart the public's general right of access to public records. Similarly, the defendant also is arguing that R.I.G.L. §38-2-2 (d)(1) somehow renders a nullity R.I.G.L. § 38-2-2
(d)(4)(c) which permits the disclosure of "records maintained by law enforcement agencies for criminal law enforcement . . ." unless it can be shown that the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy . . ." On the contrary, the section of APRA expressly declaring its "Purpose" as well as § 38-2-2 (d)(4)(c) contemplate the disclosure of background information as well as identities so long as there are no "unwarranted disclosures." To put it another way, when the circumstances warrant, disclosure is permitted. Thus, at the very least, DARE can obtain those records where civilian complaints describe conduct which constitutes a violation of a penal statute, e.g., excessive force.
The necessary consequence of defendant's interpretation of the APRA is that the public is denied access to any governmental record referencing discipline being meted out to a public employee. As it is beyond debate that one of the principal objectives of a court in interpreting and applying a statute is to effectuate the legislative intent, the defendant's theory would have the court conclude that a central purpose of the legislature in enacting the Access to Public Records Act was to create for public employees an impregnable domain of privacy in which unprofessional, disruptive and even unlawful conduct directed towards members of the public can remain isolated from public view. In the view of this Superior Court justice, this interpretation of the law is offensive to the legislature's stated purpose and its willingness to permit invasions of privacy where warranted by the circumstances.
The circumstances under review here are simple and straight-forward and do not involve any possible "unwarranted invasion of personal privacy." There has been no suggestion by either party in this case that the plaintiff seeks any information about the personal behavior or background of any police officer; rather allegations of professional misconduct are the matters the plaintiff wishes to review, along with the administrative responses to such allegations. There is no request for — nor does the statute permit, directly or indirectly — personal information in the police department files pertaining to a police officer's marital status, credit rating, foreclosures or bankruptcies, a child or sibling engaging in criminal behavior, physical or psychological problems, and the like.[2] Unlike the teachers who prevailed in Sherman Publishing Co. v.Carpender, 659 A.2d 1117 (R.I. 1995) on their claim to privacy respecting notice of termination for budgetary reasons, under R.I.G.L. 16-13-2, police officers on the street interacting with the public have no reasonable expectation of privacy and APRA does not suggest one.
No analysis of the issues raised in this matter can be undertaken without recognizing that the genesis of the Access to Public Records Act as well as the instant controversy are in the domain of the First and Fourteenth Amendments to the United States Constitution. Our Supreme Court pointed this out in TheRake v. Gorodetsky:
 The United States Supreme Court has recognized that the public's right to know and have access to information is an essential part of the First Amendment. Through the Freedom of Information Act, Congress has enhanced this First Amendment interest by creating a clear right in the public and the press to have access to information held by the government. 452 A.2d, at 1146.
Among the cases noted by the Rhode Island Supreme Court in support of its observation were two leading United States Supreme Court decisions, Globe Newspaper Co. v. Superior Court, 457 U.S. 596
(1982) and Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555
(1980). 452 A.2d, at 1146 (fn. 4).
In Richmond Newspapers. Inc., the Supreme Court considered the right of access by the public and the press to a criminal trial, and while the Justices could not agree on a majority opinion, seven Justices in five concurring opinions agreed that the First and Fourteenth Amendments guaranteed such a right, though the Constitution does not specifically delineate it. As the author of the plurality opinion, Chief Justice Burger noted that "the Court has acknowledged that certain unarticulated rights are implicit in enumerated guaranties," 448 U.S., at 579, and went on to conclude: "We hold that the right to attend criminal trials is implicit in the guaranties of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and `of the press could be eviscerated.'" 448 U.S. at 580. (Citation omitted).
Similarly, access to governmental information is essential in a community where the people are sovereign and where they govern themselves. Sovereignty and self-government would be empty ideals if the people and the press did not have access to relevant information about those who are entrusted with enforcing the law and who possess the awesome powers to arrest and to use deadly force. To borrow the words of Justice Stevens, concurring in Richmond Newspapers. Inc., : " . . . an arbitrary interference with access to important information is an abridgment of the freedoms of speech and of the press protected by the First Amendment." 448 U.S., at 583.
Here, the defendant is arguing that the privacy interests of police officers and the disciplinary actions — or inactions — of police administrators are isolated from scrutiny by both individual citizens and members of the press, even though the actions arose out of public conduct by the officers and even though the Supreme Court of the United States, and our own Supreme Court, have made it clear that in such circumstances the people of a free society have an absolute right to such information. Time and again the United States Supreme Court has spoken of the heavy burden on government and government officials to demonstrate a compelling interest if any burden is to be placed on an individual's exercise of First Amendment rights.[3] Here, the Chief of Police has not come close to meeting such a burden. The City attorney has conceded that there is no adequate, let alone compelling, justification for concealing information about civilian complaints, especially those resolved adversely to the police officer, from scrutiny by DARE or any other party. Needless to say, there is a compelling government interest in precluding the disclosure of information that has nothing to do with the discharge of duties one has sworn to perform, and the reason for this is that government must be attractive and rational as a potential employer of competent and dedicated people: very few people in that category would embark upon public service if personal matters pertaining to marriage, divorce, physical and psychological problems, financial difficulties and so on would be open to public scrutiny. Indeed, such scrutiny is not required, as a person's marital status or credit rating have nothing to do with his or her ability to arrest a fleeing felon, design a bridge or assess the consequences of dumping in a wetland.
Additionally, the defendant Chief of Police asserts that under the Access to Public Records Act he has an obligation to protect not only the identity of police officers against whom civilian complaints are brought but also the names of the persons bringing the complaints. This position finds no support in the exceptions set forward in R.I.G.L. § 38-2-2 (d). As the central objective of APRA is to advance First Amendment interests by specifically granting a general access to government records by individual members of the public and press, with a few categories of exceptions carefully delineated, a trial judge is not at liberty to create an exception for a type of document or category of record that the legislature did not identify. Those who wish to level charges against police officers have been given no cloak of anonymity.
It would indeed be anomalous, not to mention unfair, if the civilian complainant had the option of either filing a complaint accompanied by a press conference and appearances on talkshows or leveling charges that remain hidden from public view. Charges are often found to be unsupportable by evidence or even patently malicious and baseless, but whatever their merits, our traditions do not support faceless, secret accusations; and in the statute under review the legislature did not deviate from this historical operating principle. Compare Providence Journal Co. v. Newton,723 F. Supp. 846 (D.R.I. 1989).
Though the plaintiff has not pressed for the identity of individual police officers whose names are necessarily residing in the files and documents sought, as the trial judge deciding this matter I have felt obliged to address the issue of disclosure and redaction. Whatever the role of a trial judge in a common law, democratic tradition may be, it is certainly not to approve agreements or concessions by private parties that could in any way suggest that the court has concluded the statute may be interpreted and applied in a way contrary to the mandate of the First Amendment to the United States Constitution. A trial judge should no more approve of such agreements than he or she can approve of a consent by the parties to the court's jurisdiction in those circumstances where no jurisdiction exists.
In the instant matter, if the plaintiff elects to do so, it may refrain from seeking the names of any complainants or police officers that have found their way into the records that are the subject of dispute in this case. However, in the opinion of the court, the plaintiff is entitled to all the records it sought, without the redaction of any names.
The parties also dispute the costs involved in reproducing those records are to be turned over to the plaintiff. At this juncture in the litigation, it is impossible to say how many documents must be turned over and what the reasonable payment should be pursuant to the provisions of R.I.G.L. § 38-2-4. The court is hopeful that good faith efforts on the part of counsel for the respective parties can adjust the question of costs to the satisfaction of their clients. If that is not possible they may return to the court for a resolution of this aspect of the case.
For the reasons set forward above, the Motion for Summary Judgment brought by the plaintiff is granted and that brought by the defendant is denied. Plaintiff's counsel shall submit a judgment in conformity with this decision.
[1] In R.I.G.L. § 38-2-2 (d) the legislature also exempted, among other things, "trade secrets," "security plans of military and law enforcement agencies," "test questions," "reports and statements of strategy or negotiation involving labor negotiations," etc., but none of these is involved in this litigation.
[2] This court, like the legislature, is sensitive to the need of maintaining a secure barrier between that which is public and that which is private and personal. For a thoughtful exploration of the unfortunate consequences for our political and social institutions when the line between the public and the private is eroded, see Jean Elshtain, Democracy on Trial (1995)
[3] See, e.g. Simon Schuster v. Crime Victims Board, 502 U.S. 105, 117-118 (1991) and Minneapolis Star Tribune Co. v.Minnesota Commissioner of Revenue, 460 U.S. 575, 592 (1983).